Argued January 13, affirmed June 20, 1978

# UIHLEIN, *Appellant,*
## *v.*
# ALBERTSON'S, INC., *Respondent.*
## (TC A7605-06677, SC 25272)
### 580 P2d 1014

Charles Robinowitz, Portland, argued the cause and submitted briefs for appellant.

Elizabeth Reeve and Ridgway K. Foley, Jr., Portland, argued the cause for respondent. With them on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe and James F. Spiekerman, Portland.

Before Holman, Presiding Justice, Howell and Lent, Justices, and Gillette, Justice Pro Tempore.

LENT, J.

**LENT, J.**

This is an action by a business visitor for damages for injuries allegedly resulting from negligence of the defendant retail storekeeper. Defendant's motion for summary judgment was granted, and judgment was given for defendant for costs and disbursements. Plaintiff appeals, and we affirm.

The sole issue on appeal is whether the pleadings, depositions and affidavits presented to the trial judge upon consideration of the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ORS 18.105(3).

Plaintiff particularly alleges:
"* * * * *

"[Plaintiff, while a customer in the store, was struck from the rear by an unknown third party.]

"Plaintiff's injuries were proximately caused by the negligence of the defendant in that defendant knew or should have known that its supermarket on Cully Boulevard is in an area where the commission of violent crimes is reasonably foreseeable and it failed to provide any security forces, warning, alarms, unusual lighting to protect patrons of its supermarket and discourage the commission of crimes therein.

"[The unknown third party, in addition to injuring plaintiff, took money from her.]
"* * * * *"

Defendant's motion for summary judgment was "based upon" the pleadings (plaintiff's amended complaint and defendant's general denial answer), the depositions of plaintiff, Roger Hough (defendant's assistant Cully Boulevard store manager), Donald C. Davis (defendant's Cully Boulevard store director) and Donovan W. Humphreys (plaintiff's investigator), the affidavit of Donald C. Davis, and the affidavit of Joe Maresh (Davis' predecessor at defendant's Cully Boulevard store). It is unclear from the record whether plaintiff's affidavit was before the trial court, but in

[ 633 ]

their briefs the parties have treated it as so, and we do the same.

■ In considering whether to grant a motion for summary judgment, the court, as a general rule, must draw all inferences of fact from the depositions and affidavits against the moving party and in favor of the party opposing the motion. *Forest Grove Brick v. Strickland,* 277 Or 81, 87, 559 P2d 502 (1977).[1] Assuming that plaintiff will have put her best foot forward in summarizing the evidence, including inferences,[2] we turn to the "Statement of Material Facts" in her brief.[3] We, therefore, with one exception hereinafter noted, adopt as being facts the statement from plaintiff's brief:

"On December 11, 1975, the plaintiff, Mrs. Priscilla Uihlein, was shopping in an Albertson's supermarket on Northeast Cully Boulevard and 60th Street in Portland at between 9:00 and 9:30 p.m., when a young unidentified black man knocked her to the floor from behind, grabbed her pocketbook which was slung over her left shoulder, and ran from the back of the store out the front door. As a result of this theft, the plaintiff, a 53-year-old woman, suffered injuries to her shoulder and neck, and lost thirty dollars in cash from her pocketbook. * * *

"The supermarket is located in a high crime rate area in Northeast Portland, and the manager in charge of the store at the time of the incident, Roger Hough, described it as the roughest store where he has worked, and that he felt uneasy when he was at the store. *He had asked for some security protection previously, but Albertson's refused this because it was too expensive. (Humphreys depos., Ex. 2, p. 8)* Another manager of that particular store said there were times when he felt 'spooky' at the store, and the store had a substantial amount of shoplifting. * * *

---

[1] *Cf. Adickes v. Kress & Co.,* 398 US 144, 157 (1970); *Cox v. American Fidelity & Casualty Co.,* 249 F2d 616, 618 (9th Cir 1958); 6 Moore's Federal Practice ¶ 56.04[2], 56.15[3] (2d ed 1976).

[2] ORS 41.310 through 41.330.

[3] Rule 7.17(e) of the Rules of Procedure of this court require a "concise but complete summary of all the facts of the case material to the determination" of the issue(s) upon appeal.

"Other than a policy of prosecuting all shoplifters who are caught and asking customers and employees to be alert for shoplifting, the defendant did not take any security precautions to discourage commission of any crimes. * * * It had no security guards, photo equipment, alarm systems or unusually bright lighting in the parking lot. * * * Other supermarkets in the general area such as Fred Meyer's at Northeast 70th Street and Sandy Boulevard, Safeway's at Northeast 42nd Street and Killingsworth and Big C at Northeast 33rd Street and Killingsworth had some security protection on December 11, 1975. * * *

"At the time of plaintiff's injury, the store was not crowded, and there were only about six or seven employees on duty, most of whom were behind counters or at the checkout stands at the front of the store. * * * The robbery and assault on the plaintiff took place at the rear of the store." (italicizing added)[4]

We direct specific attention to the italicized matter, because plaintiff relies upon it to predicate negligence upon defendant's part on at least five of the thirteen pages of her opening brief and on two of the five pages of her reply brief. Typical of the use of the italicized material is the following from the reply brief:

"Albertson's final argument is that Mrs. Uihlein's injury was not foreseeable because it had no knowledge of prior assaults in the store. * * * But this argument ignores again the statements of Roger Hough that this was the roughest store where he had worked, that he felt uneasy at the store, *and he had asked for security protection. Humphreys depos., Ex. 2, p.8.* One permissible inference from these statements is that Roger Hough foresaw the threat of harm to Albertson's patrons and understandably he was concerned. This alone should dispose of this contention." (italicizing added)

---

[4]Defendant wastes its time and ours by setting forth at some length in its brief both evidence contradictory to that quoted from plaintiff's brief and evidence completely immaterial to our inquiry; e.g., the fact that Hough gave plaintiff a cup of coffee after the assault. The function of the court is *not to resolve* conflicts in the evidence but to determine if there are conflicts which pose a genuine issue as to any material fact. ORS 18.105(3). Defendant's discussion of the facts would have been more helpful had it pointed out the inaccuracy of the italicized matter quoted in the text.

It is true that "Humphreys depos., Ex. 2, p.8" does contain the deponent's testimony that defendant's store manager Hough admitted to deponent Humphrey that this was the roughest store he had ever worked at and, also, that he felt uneasy at times when he was at the store. It is simply not true that the Humphrey deposition Exhibit 2[5] shows that store manager Hough had asked defendant for security protection and that defendant had denied its store manager's request "because it was too expensive"; moreover, the expenditure of a considerable amount of judicial time occurred in a fruitless search of the record[6] to ascertain whether the italicized material appeared elsewhere and the inaccuracy of the source citation was merely inadvertent. Such evidence simply does not exist in the record. We are disappointed in counsel, but we do not decide against his client on that basis; neither, of course, shall we lean over backward to compensate for our disappointment.

We do not overlook the fact that defendant may be charged with the knowledge that this was the roughest store in which Hough ever worked and the knowledge that Hough felt uneasy at times. We find nothing in the record, however, to show with what conditions in other stores Hough was comparing this store. Neither do we find anything that gives us any clue to the source of his uneasy feeling or the nature thereof. A reasonable inference might be that in a "high crime

---

[5]The text of Exhibit 2 is:

"This is a telephone interveiw (sic) with Roger Hughes (sic) concerning the assault on Mrs. Uihlein on 12-11-75 between 9:00-9:30 pm. (sic).

"I questioned him (Hughes) (sic) about security or photo equipment for the store and he stated that it was to (sic) expensive to provide. I questioned him about how he felt about this area. He stated that this is a high crime rate area and is the roughest store that he has every (sic) worked at. I questioned him about the problem of shop lifting (sic) and what happens if the store catches anyone. He stated that the store prosecutes all shoplifters. He also stated that he also felt uneasy at time (sic) when he was at the store. I ask (sic) him if anyone tried to stop or follow the assaliant (sic) and his answer was no."

[6]102 pages of depositions and 6 pages of affidavits.

[ 636 ]

rate area" he was uneasy with respect to his own safety, but neither in the statement attributed to him by plaintiff's investigator nor in Hough's deposition is anything to suggest he was uneasy with respect to the safety of defendant's patrons. Indeed, he was not even asked if this were so or of the nature of his uneasiness upon the taking of his "discovery" deposition (39 pages of transcription) taken by plaintiff ten months after the telephonic interview by plaintiff's investigator.

There are other facts established which we find important. Without contradiction, defendant's affidavits by the Cully Boulevard store managers show that from February 1973 to the time of this incident no such incident or similar incident had occurred, and, particularly, there had been "no incidents of robbery or assault or battery or any attack by one customer upon another." Plaintiff's deposition discloses that the inside of the store was "[v]ery well lit."

■ We discern no essential difference between this negligence case involving summary judgment for a defendant and that in which a defendant is granted a judgment of involuntary nonsuit when plaintiff has rested upon trial. Summary judgment for the defendant may be granted only when the court can say that the defendant's conduct clearly meets "the standard of reasonable conduct deemed to have been set by the community." *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 607, 469 P2d 783 (1970). *See also Jacobs v. Tidewater Barge Lines,* 277 Or 809, 816, 562 P2d 545 (1977).

### *Lighting*

■ With this in mind we turn to the charges of negligence. One charge is that the defendant failed to provide "unusual lighting" to protect its patrons and discourage the commission of crimes *in* the supermarket. While it is true that store manager Davis admitted that there was not "unusually bright light in the parking lot," plaintiff conceded in her deposition that the interior of the store was "[v]ery well lit." To

hold that the defendant's conduct clearly meets the standard of conduct deemed to have been set by the community depends upon whether we can say, as a matter of law, that a reasonable man, "making an inventory of the possibilities of harm which his conduct might produce," would not have reasonably expected the injury *inside the store* to result from his failure to provide "unusual lighting" in the parking lot. *Stewart v. Jefferson Plywood Co., supra* at 609. We can and do so say.

### Alarms

Plaintiff charges that defendant was negligent in failing to provide "alarms" to protect its patrons and discourage the commission of crimes *in* the store. We are at a loss to understand the exact nature of this complaint. A circuit judge denied defendant's motion to make this specification more definite and certain, but we have no record of the oral argument on the motion. There is nothing in plaintiff's briefs to enlighten us as to just what it is of which plaintiff complains in this particular. The only references in the record to "alarms" is found in the discovery depositions of defendant's store managers, Davis and Hough, which tell us that there was a burglar alarm system connected to the safe (near the front windows of the store) and on the second floor (connected to a private security company), and that there was "some sort of fire escape alarm" on the back door of the store. Our imagination is not sufficiently fertile to conjure from this exiguous foundation just what kind of "alarms" should have been provided and how their presence would have protected plaintiff from these injuries to person and property. As a result, we are at a loss to find a genuine issue of material fact with respect to the absence of "alarms."

### Security Forces

Plaintiff alleges that defendant was negligent in failing to provide any security forces to protect patrons of its supermarket and discourage the commission of

crimes therein. Plaintiff places her main reliance upon 2 Restatement (Second) of Torts § 344:

> "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> "(a) discover that such acts are being done or are likely to be done, or[7]
>
> "(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Plaintiff relies more particularly on Comment *f*:

> "Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."

We apparently adopted § 344 and Comment *f* as being a part of the law of this state in *Whelchel v. Strangways,* 275 Or 297, 304, 550 P2d 1228 (1976).

The record shows that plaintiff was assailed from the rear without provocation and that she did not hear the assailant approach. There is nothing in the record to show that any of defendant's employes either took any prior notice of the assailant or had any reason to do so before his harmful act against plaintiff. Nor is

---

[7] We are puzzled by use of the disjunctive rather than the conjunctive, but it is unnecessary for us to explore that matter in this case.

there anything in the record to show defendant was otherwise aware that this particular harmful act was about to occur. We hold, therefore, that as a matter of law defendant did not fail to exercise reasonable care to discover that this particular harmful act was "being done."

This does not dispose of the question of whether defendant failed to exercise reasonable care to discover that this harmful act was "likely to be done." The store is located in a "high crime rate area," but the record discloses that only shoplifting occurs *in the store.* Plaintiff's affidavit shows that various types of crimes, including assaults, are likely to be committed in the area "if one does not take precautions."

In her affidavit plaintiff swears that she does not feel safe *on the streets* (emphasis ours) at night in the area. Significantly, however, in her deposition she swears that in her four years of shopping at this store every two weeks on the average she never saw any evidence of crime "in and around" the store. We have earlier discussed the want of significance of Hough's feeling of uneasiness and his characterization of the store as being the roughest one where he has worked. The same may be said for Davis' statement that he felt "spooky" at times. Other supermarket operators in the "general area" had "some security protection" at the time. Nowhere in the record or in the briefs is there any hint of the kind of security protection at those other stores; furthermore, upon this record it is sheer speculation as to why the operators of those stores had "some security protection." Perhaps, unlike in the case of defendant's store, there had been crimes committed "in and around" these stores (other than shoplifting), and perhaps the commission of such crimes led those operators to employ some kind of security. We find all these factors insufficient to charge defendant with notice that a harmful act of this kind was likely to occur in its store.

■  Since, as a matter of law, on this record defendant neither knew nor had reason to know of the likelihood

of harmful acts of this kind against its patrons in general and plaintiff in particular, no duty to provide a security force arose prior to this plaintiff's injury.

## *Warning*

■ We do not understand plaintiff to urge that in the circumstances defendant had any actual notice of the imminence of this particular harm and had time to give warning to her that would have prevented her injuries. We gather she is complaining of a failure to warn her against harm of this general nature. As in the case of the failure to provide a security force, the duty to warn does not arise until the storekeeper knows or has reason to know of the likelihood of harm. By this we do not mean to say that the storekeeper must be able to foresee the exact harm which occurs, but there must be something to alert the storekeeper to the likelihood of harm of some kind from a criminal agency. There is nothing in this record to show the defendant should have anticipated an assault and robbery of plaintiff *in defendant's store;* therefore, no duty to warn arose.

## *Generally*

Plaintiff contends further that she should prevail in having this case submitted to a jury under the decisions of this court in *Whelchel v. Strangways, supra,* and *Peck v. Gerber,* 154 Or 126, 59 P2d 675 (1936). Both cases involved actions by a patron against the operator of a tavern in which the plaintiff was injured by reason of brawling among patrons. In *Peck* the evidence showed that the very patron who engaged in the brawl had been guilty of belligerent conduct in defendants' premises upon other, earlier occasions. We there noted that a tavern is a place that experience teaches us is one in which fights and disorderly conduct are likely to occur. In *Whelchel* the evidence showed that other fights had occurred at earlier times in the tavern and that the defendants had taken no

precautions to protect patrons during those disturbances. As we noted in *Whelchel,* § 344 governs that situation. It will not stretch to the case at bar.

■ Plaintiff's injuries and the manner of their occurrence are out of the range within which a jury could determine that the injuries were reasonably foreseeable. *Stewart v. Jefferson Plywood Co., supra.*

Judgment affirmed.