Argued and submitted September 24, affirmed December 1,
reconsideration denied December 19,
petition for review denied December 31, 1980 (290 Or 302)

# HATLEY,
## *Appellant,*

*v.*

# SKATELAND, INC.,
## *Respondent.*

### (No. 79-27 L, CA 17401)

619 P2d 1333

Glenn D. Ramirez, Klamath Falls, argued the cause and filed the briefs for appellant.

Douglass H. Schmor, Medford, argued the cause for respondent. With him on the brief was Brophy, Wilson & Duhaime, Medford.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

### JOSEPH, P.J.

Plaintiff sued to recover damages for injuries sustained while he was a patron of defendant's roller skating rink. At the close of plaintiff's case, the court granted defendant's motion for directed verdict. Plaintiff assigns that ruling as error. We affirm.

■        We examine the evidence in the light most favorable to plaintiff to determine if there was sufficient evidence to warrant submission of the case to the jury. *City of Rogue River v. DeBoer,* 288 Or 485, 488, 605 P2d 619 (1980); *Hemstreet v. Spears,* 282 Or 439, 441, 579 P2d 229 (1978).

On November 25, 1978, plaintiff, who was nine years old at the time, went roller skating at defendant's establishment as a paying customer. After he had skated for approximately 45 minutes, defendant announced a "boys only" skating period. Males as young as four may participate at such a time, during which fast skating and other maneuvers generally prohibited at other times are permitted. One of those maneuvers is called "Shooting the Duck," in which a skater squats down and skates on one foot, with his free leg extended in front. After skating once or twice around the rink during "boys only" skating, plaintiff stopped by the railing that borders the skating surface and stood there talking with two family members. He had been there for less than a minute, and perhaps for only a few seconds, when a boy in his middle teens who was "Shooting the Duck" collided with him, causing the injuries that are the subject of this action.

Plaintiff's complaint alleged that

"[T]he Defendant was negligent in failing to properly supervise the skating activities, particularly of the person who skated into Plaintiff, injuring him as foresaid, and that said negligence was the proximate cause of the Plaintiff's injuries."

Defendant's amended answer denied those allegations, and for a further answer and affirmative defense alleged:

"*** [T]hat at all times material herein the plaintiff was voluntarily participating and engaging in the sport of roller skating; and therefore the plaintiff knew or should have known of the open and obvious risks and hazards

customarily associated with said sport; and plaintiff therefore assumed such risks."

This case is governed by Restatement (Second) of Torts § 344 (1965), which states:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a) discover that such acts are being done or are likely to be done, or[1]

"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Comment f to this section states:

"Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."[2]

At the time of the accident, defendant had three rink attendants stationed around the rink, but not on the skating surface. Virginia Harris, co-owner of the skating rink, testified that during the "boys only" period the rink

---

[1] The Supreme Court has expressed its puzzlement at the use of the disjunctive rather than the conjunctive in this provision. *See Uihlein v. Albertson's, Inc.,* 282 Or 631, 639, 580 P2d 1014 (1978). The issue is not before us here.

[2] The Supreme Court adopted § 344 and Comment f as the law of this state in *Welchel v. Strangways,* 275 Or 297, 304, 550 P2d 1228 (1976). *See also Uihlein v. Albertson's, Inc., supra* n 2.

attendants do not skate on the skating floor because their off-rink vantage points afford them a better view of the entire floor than they would have if they were skating.

Plaintiff introduced no evidence that defendant should have anticipated careless skating during the "boys only" period by its patrons in general. Further, there is no evidence from which a jury could have reasonably found that defendant knew or should have known that the particular teenage boy's manner of skating was likely to endanger plaintiff and that defendant should therefore have taken measures to control that boy's conduct or to warn other patrons. Plaintiff failed to show that defendant provided an unreasonably small number of attendants or that by increasing the number of attendants or changing the method of supervision defendant could have warned either of the skaters and thereby averted the mishap. Therefore, the evidence produced at trial showed no breach by defendant of the standard of reasonable care toward plaintiff.

██ Furthermore, by engaging in roller skating at defendant's facility, plaintiff assumed the risk of unwanted and potentially injurious accidental contacts with other skaters. In *Blair v. Mt. Hood Meadows Development Corp.,* 48 Or App 109, 616 P2d 535 (1980), we discussed the doctrine of actual assumption of the risk in the context of an action by the plaintiff to recover damages for injuries suffered in a fall while skiing at defendant's ski facility. We stated that that defense was

> "based on plaintiff's agreement to join in a sport or similar activity in which the particular risk is a known element of the activity when properly conducted. *** [T]he defense really negates that a defendant's conduct which might be fault in other contexts is fault at all, rather than implying that plaintiff forgave the fault in advance." *Blair v. Mt. Hood Meadows Development Corp., supra,* 48 Or App at 112, *quoting from Hornbeck v. Western States Fire Apparatus,* 280 Or 647, 651, 572 P2d 620 (1977).

The participant assumes those risks that inhere in the sport that are known to him. *Blair v. Mt. Hood Meadows Development Corp., supra.*

Plaintiff, who conceded that he "wasn't the greatest" skater, testified that he had been skating on several

occasions prior to the evening of his injury. He also stated that he had fallen "a lot" when he was just learning how to skate and fell "about once or twice" in 45 minutes of skating that evening. He had previously seen other people fall and collide with each other while skating and had had other skaters run over him after he had fallen and was on the skating floor. Thus, at the time of the accident, he was aware of the risk that another skater might run into him on the skating surface. That risk would be an obvious and known hazard resulting from the simultaneous presence of a number of people cavorting on roller skates in a skating rink. Under these circumstances, plaintiff, "by his own act of knowingly placing himself in an area of appreciated risk, which was not created by any unreasonable conduct of the defendant," was barred from recovering for his injuries. *Hunt v. Portland Baseball Club,* 207 Or 337, 354, 296 P2d 495 (1956).

The trial court did not err in granting defendant's motion for a directed verdict.

Affirmed.