Argued and submitted July 20, 1992, affirmed March 17, 1993

Janet KRAXBERGER,
an individual,
*Appellant,*

*v.*

CHEVRON USA, INC.,
a Pennsylvania corporation,
*Respondent.*

(9007-04241; CA A70608)

848 P2d 1242

Roger Hennagin, Lake Oswego, argued the cause for appellant. With him on the briefs was Roger Hennagin, P.C., Lake Oswego.

Thomas W. Sondag, Portland, argued the cause for respondent. With him on the brief were Scott P. Monfils and Lane Powell Spears Lubersky, Portland.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

De MUNIZ, J.

---

* Leeson, J., *vice* Buttler, J., retired.

## De MUNIZ, J.

Plaintiff sued defendant (Chevron), claiming that it had committed an unfair employment practice when it refused to reemploy her in a position that was available and suitable. ORS 659.420. Chevron moved for summary judgment on the ground that plaintiff's claim was time-barred under ORS 659.121(3). The court granted the motion. Plaintiff appeals, and we affirm.

Plaintiff worked for Chevron in its warehouse. In February, 1987, she injured her shoulder while lifting a case of antifreeze. She received medical treatment and missed a few days of work, but then returned to her former duties.

Plaintiff's shoulder continued to bother her. About a year later, on February 28, 1988, she asked her supervisor to relieve her from the duty of moving tires. On March 1, 1988, Chevron's physician determined that plaintiff's condition precluded her from performing all of her duties in the warehouse. The physician also determined that plaintiff's condition was "unlikely to get better in a short period of time." On March 2, 1988, plaintiff presented that information to her supervisor. She again asked her supervisor to modify· her duties to eliminate those tasks that she could not perform. The supervisor refused and placed plaintiff on medical leave. He told her that she could not return to her position until she had a doctor's release allowing her to perform all of her duties. He informed plaintiff that Chevron had no light-duty positions available.

Within "a few months" after she had left work on March 2, 1988, plaintiff became aware that Chevron had filled office positions during the time that she had been placed on medical leave. Plaintiff considered herself capable of performing those jobs.[1] Throughout that same time period, plaintiff remained incapable of performing her duties in the warehouse. She made periodic demands for reemployment, sometimes through vocational rehabilitation counsellors, to any

---

[1] Plaintiff's undisputed deposition testimony is that she became aware that at least one person had been transferred to an office position within "a few months, two, three months * * * [o]r maybe a few months longer" after she went on medical leave on March 2, 1988.

available and suitable employment. Chevron rejected plaintiff's demands for reemployment, claiming that it had no suitable positions available.

Almost two years later, in July, 1990, plaintiff filed this action under ORS 659.121(1).[2] She claims that Chevron violated ORS 659.420(1) by refusing to reemploy her in an available and suitable position. Plaintiff's first claim alleges that she made a demand for reemployment on March 2, 1988, that Chevron refused to employ her in an available and suitable position, and that Chevron had "engaged in a continuing course of refusing to reemploy her." Plaintiff's second claim alleges that she made a demand for reemployment in February, 1990, and that Chevron refused to employ her in an available and suitable position.[3]

Chevron moved for summary judgment. The court granted the motion. We draw all inferences of fact from the record in favor of plaintiff. *Uihlein v. Albertson's, Inc.*, 282 Or 631, 634, 580 P2d 1014 (1978). To prevail on its motion, Chevron had to show that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. ORCP 47C; *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978).

ORS 659.420(1) provides:

"A worker who has sustained a compensable injury and is disabled from performing the duties of the worker's former regular employment shall, upon demand, be reemployed by the worker's employer at employment which is available and suitable."

The purpose of ORS 659.420 is to "protect injured workers against certain consequences of their injuries and of their invocation of the Workers' Compensation Law." *Lane County*

---

[2] ORS 659.121(1) provides, in part:

"Any person claiming to be aggrieved by an unlawful employment practice prohibited by ORS * * * 659.420 * * * may file a civil suit in circuit court for injunctive relief and the court may order such other equitable relief as may be appropriate."

[3] Plaintiff's third amended complaint contains four claims. She continues to press only her two claims alleging violations of ORS 659.420.

*v. State of Oregon*, 104 Or App 372, 377, 801 P2d 870 (1990), *rev den* 311 Or 266 (1991).[4]

ORS 659.121(3) requires that any action claiming violation of ORS 659.420 "shall be commenced within one year of the occurrence of the alleged unlawful employment practice." Plaintiff's claim, filed in July, 1990, is untimely if the Statute of Limitations began to run before July, 1989. The parties cite no case, and we find none, that addresses the issue of when the Statute of Limitations begins to run under ORS 659.420.[5] To resolve that issue, we must first set out the substance of the unlawful employment practice defined in that statute.

■ The statute provides that an employer commits an unlawful employment practice when it refuses an injured worker's demand for reemployment in work that is suitable and available. ORS 659.420(1). Plaintiff argues that the Statute of Limitations should not begin to run until an injured worker knows or should know that suitable work is available after the employer has refused the worker's demand. We agree. Without that knowledge, an injured worker would have no reason to bring an action alleging an unlawful employment practice. *See Williams v. Waterway Terminals Co.*, 298 Or 506, 693 P2d 1290 (1985).

■ However, we disagree with plaintiff's assertion that a new unlawful employment practice occurs each time an injured worker makes a new demand for reemployment. Plaintiff's argument presumes, wrongly, that injured workers who exercise their rights under ORS 659.420 are required to make periodic demands for reemployment.

The Commissioner of the Bureau of Labor and Industries (BOLI) has the authority to establish rules "required to carry out the purpose" of ORS 659.420. ORS

---

[4] The record indicates that plaintiff filed a workers' compensation claim and that defendant accepted it but does not indicate the date of either of those events.

[5] In *Dobie v. Liberty Homes*, 53 Or App 366, 632 P2d 449 (1981), we held that the Statute of Limitations in ORS 659.121(3) began to run on a claim alleging a violation of ORS 659.415 when the plaintiff was terminated from his employment. Two days after he suffered a compensable injury, the plaintiff reported to work and demanded reinstatement. The opinion assumes that the plaintiff was aware at that time that his former position was available and suitable. *Dobie* is consistent with our holding in this case.

659.103(1)(e). In 1983, BOLI promulgated OAR Chapter 839, Division 6, which sets out the manner in which employers must exercise their responsibilities and injured workers must preserve their rights under ORS 659.420.

Consistent with what we view to be the legislature's intent, BOLI's administrative scheme contemplates the return of a worker after an absence caused by an on-the-job injury. An injured worker must demand reemployment in available and suitable employment "immediately, but no later than the fifth work day following the date specified on the certificate for the worker's return to work." *Former* OAR 839-06-135(1)(b)(A)(iii).[6] If an injured worker makes that *one* demand and complies with additional requirements that the rules impose, the continuing burden to *offer* an available and suitable position shifts to *the employer*.[7] The Statute of Limitations begins to run when a worker who has made a demand in accordance with the administrative scheme knows or should know that work is available and suitable.

■  Even if we assume that plaintiff complied with the administrative scheme for preserving her rights under ORS 659.420, she testified that she became aware "within a few months" after March, 1988, that Chevron had declined to offer her a position that she contends was available and suitable. The Statute of Limitations began to run when she learned that fact.[8] Even if we could infer from her testimony that plaintiff first learned of the suitable job sometime within the next year, that is still more than one year before she filed this action in July, 1990. Consequently, this action is barred by ORS 659.121(3).

---

[6] We apply the version of the rule that was in effect between March 2, 1988, the date plaintiff went on medical leave, and July, 1990, when plaintiff filed suit. The rule has since been amended.

[7] OAR 839-06-135(4)(a) provides, in part:

"If, at the time of the injured worker's demand to return to work, the employer has no suitable jobs available, the employer's obligation to reemploy the injured worker continues until the employer offers the injured worker the next suitable job which becomes available."

[8] Plaintiff's second claim alleges that she demanded reemployment in February, 1990. The court properly entered judgment against plaintiff on her second claim, because the unlawful employment practice was complete within "a few months" after March, 1988. Subsequent demands and refusals did not give rise to an independent claim of an unlawful employment practice under ORS 659.420. *See Dobie v. Liberty Homes, supra* n 5, 53 Or App at 370-71.

■      We also reject plaintiff's argument that Chevron should be equitably estopped from asserting the Statute of Limitations defense because it continued to assert that it had no suitable work available. Any reliance that plaintiff placed on her supervisor's assertion that no suitable work was available in March, 1988, ceased to be justifiable a few months later when plaintiff became aware that office positions were available. From that moment, plaintiff was no longer ignorant of the truth. *See Dobie v. Liberty Homes, supra* n 5, 53 Or App at 372.

Affirmed.