**Kerry SENGER, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 94–35688.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 18, 1995.

Decided Dec. 27, 1996.

---

Barry L. Adamson, Lake Oswego, OR; Charles F. Mitchell, Hedges and Mitchell, Oregon City, OR, for plaintiff-appellant.

Anthony J. Steinmeyer and Steven Frank, United States Department of Justice, Washington, DC; William W. Youngman, Assistant United States Attorney, Portland, OR, for defendant-appellee.

Before: WALLACE, D. W. NELSON, and BRUNETTI, Circuit Judges.

D. W. NELSON, Circuit Judge:

Appellant Kerry Senger brings this action against the U.S. Government pursuant to the Federal Tort Claims Act ("FTCA"). He claims damages for injuries that allegedly were inflicted by a U.S. Postal Service employee who assaulted him as he was attempting to tow the employee's car from the post office parking lot. Senger asserts three negligence claims: (1) negligence in hiring; (2) negligence in supervision; (3) negligent failure to warn. The district court dismissed the first two claims for lack of subject matter jurisdiction pursuant to the "assault and battery" exception to the FTCA. *See* 28 U.S.C. § 2680(h). The district court granted summary judgment in favor of the United States on the claim of negligent failure to warn, finding as a matter of law that the employee's attack on Senger was unforeseeable. Senger appeals both the dismissal of his first two claims and the grant of summary judgment on the third claim. We have jurisdic-

tion under 28 U.S.C. § 1291. We reverse and remand.

## BACKGROUND

In February 1991, Kerry Senger, a tow truck driver for Speed's Towing, responded to a request from the Postal Service to remove an illegally parked vehicle from the parking lot of the Main Post Office in Portland, Oregon. When someone alerted the postal employee to whom the vehicle belonged, Ervin Lee Brown, that his vehicle was being towed, Brown ran out of the post office building to the tow truck, grabbed Senger by the neck and threatened to kill him if he did not put the car down. The Postal Service's security guard immediately intervened and separated Brown and Senger. Senger then called the Portland Police, who arrested Brown and charged him with assault and menacing. Brown was later convicted of menacing and was suspended from work for 82 days.

After exhausting his administrative remedies, Senger sued the U.S. government for $3,100 in lost wages, $5,000 in medical expenses and $500,000 in non-economic damages arising from the incident. He claimed jurisdiction in the district court pursuant to 28 U.S.C. § 1346(b).[1] Senger alleged three theories of negligence: (1) The Postal Service *negligently employed and retained* Brown because it either knew or should have known that Brown had a violent and dangerous disposition that posed a risk to Senger and others. (2) The Postal Service *negligently supervised* Brown because it failed to take steps to protect the public from the risk Brown posed and to thwart the assault on Senger before it occurred. (3) The Postal Service *negligently failed to warn* Senger of Brown's dangerous propensities.

The district court held with respect to the first two theories of negligence that under *Sheridan v. United States*, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), it did not have subject matter jurisdiction. The court read *Sheridan* as precluding the assertion of negligent hiring and supervision claims against the U.S. government based upon the "assault and battery" exception to the FTCA.[2] The district court noted that *Sheridan* had overruled a line of Ninth Circuit cases finding subject matter jurisdiction where plaintiffs alleged injuries arising from the negligent hiring or supervision of United States government employees. *See Morrill v. U.S.*, 821 F.2d 1426, 1427 (9th Cir.1987) (holding that the "assault and battery" exception did not preclude U.S. government liability where the Navy hired a go-go dancer to perform in a club for enlisted men but failed to provide adequate supervision and the dancer was assaulted and raped by an enlisted man in the women's restroom); *Kearney v. United States*, 815 F.2d 535, 537 (9th Cir.1987) (holding that the "assault and battery" exception did not preclude U.S. government liability under the FTCA for negligent supervision where an army officer being held for rape was released by another government employee in violation of military regulations and subsequently murdered the plaintiff's wife); *Bennett v. United States*, 803 F.2d 1502, 1505 (9th Cir.1986) (holding that the "assault and battery" exception to the FTCA did not preclude U.S. government liability for damages arising from the kidnapping and raping of several children by a teacher hired by the government where the government knew or should have known when it hired him that the teacher had a history of child molestation).

With respect to Senger's claim of negligent failure to warn, the district court found that it had subject matter jurisdiction and re-

---

1. 28 U.S.C. § 1346(b) provides in relevant part: [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

2. The assault and battery exception is contained in 28 U.S.C. § 2680, which provides in relevant part:

The provisions of this chapter and 1346(b) of this title shall not apply to
(h) Any claim arising out of assault [or] battery....

quested additional briefing and affidavits to support or oppose the claim. These briefs and affidavits suggest that Brown had a history of violent behavior. Among the facts alleged by Senger (and uncontested by the United States) regarding Brown's violent history are the following: (1) Brown was tried and acquitted on murder charges (no date provided); (2) Brown was committed to a psychiatric facility in 1976 after being found not guilty by reason of insanity on an assault charge arising from an attack against his wife, where Brown allegedly beat her and lunged at her with a kitchen knife; (3) Brown was committed to other psychiatric facilities because he suffered post-traumatic stress disorder associated with his service in the Vietnam War; (4) Brown was convicted in 1971 for being drunk and disorderly and in 1977 for harassment; (5) Brown was arrested in 1985 while on the job at the post office on charges of assault filed by his ex-girlfriend.

The U.S. government provided affidavits from Postal Service personnel in support of its contention that Brown was involved in no acts of abusive behavior while on the job at the post office. However, one of the affidavits reveals that in January 1986, after Brown's 1985 arrest, the Postal Service conducted an internal investigation to determine whether Brown had falsified his employment application. According to the Postal Service's own investigator, this investigation "revealed that Mr. Brown had had prior police contact resulting in a number of arrests and two misdemeanor convictions. . . . The result of the internal investigation was a proposed notice that Mr. Brown be removed from the [U.S. Postal Service]." In February 1986 this proposed notice of removal was withdrawn. The affidavit contains no explanation for the withdrawal.

The district court concluded that although Senger was a business invitee and thus entitled under Oregon law (the law that applies to this claim) to warning concerning the foreseeable intentional acts of third parties, the Postal Service could not have foreseen Brown's assault on Senger because "Mr. Brown's violent episodes were primarily in the context of domestic disputes." Thus, the

district court granted summary judgment on this claim.

## STANDARD OF REVIEW

We review determinations of the district court concerning subject matter jurisdiction de novo. *Persons v. United States,* 925 F.2d 292, 294 (9th Cir.1991). We also review a grant of summary judgment de novo. *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). Under this standard, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.), *cert. denied,* 506 U.S. 999, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992).

## DISCUSSION

I. *Subject Matter Jurisdiction Over Negligent Hiring and Supervision Claims*

The district court held that Senger's claims of negligence in hiring, retaining and supervising Brown are barred by *Sheridan,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352, which it read as requiring that in order to fall outside of the "assault and battery" exception to the FTCA, the alleged negligence of the government must be unrelated to the employment status of the actor who inflicted the injury. Reasoning that claims of negligence in hiring and supervision are related to Brown's employment status, the district court held that it lacked subject matter jurisdiction with respect to these claims. The district court also noted that *Sheridan* overruled a series of Ninth Circuit cases involving negligent hiring and supervision on the part of the government that hold that the "assault and battery" exception does not preclude liability under the FTCA. *See Morrill,* 821 F.2d at 1427; *Kearney,* 815 F.2d at 537; *Bennett,* 803 F.2d at 1505. The district court bases its finding that there is no subject matter jurisdiction over Senger's negligent hiring and supervision claims on a flawed reading of *Sheridan.* We hold that the dis-

trict court does have jurisdiction over these claims.

### A. Background on the "Assault and Battery" Exception

The scope of the "assault and battery" exception to the FTCA has been the subject of much disagreement in recent years, both among the Justices of the Supreme Court and between the circuits. In *United States v. Shearer,* 473 U.S. 52, 59, 105 S.Ct. 3039, 3043–44, 87 L.Ed.2d 38 (1985), the Court held that the U.S. government could not be held liable under the FTCA for negligently retaining and supervising a serviceman who murdered another serviceman while away from the military base. A plurality of the Court held that the claim was barred by the "assault and battery" exception to the FTCA because the assailant was a U.S. government employee. *Id.* at 54–57, 105 S.Ct. at 3041–43. It read the "assault and battery" exception to exclude "any claim *arising out of* assault or battery ... [including] claims like respondent's that sound in negligence but stem from a battery committed by a Government employee." *Id.* at 55, 105 S.Ct. at 3041 (emphasis in original). It noted that the "assault and battery" exception did not preclude government liability for negligently failing to prevent the intentional torts of *non-employees* under its supervision. *Id.* at 56, 105 S.Ct. at 3042.

However, several Justices were unwilling to read the "assault and battery" exception so broadly. *Id.* at 59–60, 105 S.Ct. at 3044. Instead, they relied on the *Feres* doctrine to reach the same result. *Id. See also Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950) (holding that a serviceman may not recover under the FTCA for injuries which "arise out of or are in the course of activity incident to service"). Thus, a majority of the Court in *Shearer* agreed that because the *victim* was in the military service, the claim was barred by the *Feres* doctrine. *Id.* 473 U.S. at 57–59, 105 S.Ct. at 3043.

In the wake of *Shearer,* numerous circuits adopted the plurality's reading of the "assault and battery" exception. *See e.g. Franklin v. United States,* 992 F.2d 1492, 1498 (10th Cir.1993) (barring claim of negligence against the United States in case of medical battery by V.A. hospital employees because claim was contingent on employment relationship); *Guccione v. United States,* 847 F.2d 1031, 1034 (2d Cir.1988), *reh'g denied,* 878 F.2d 32,33 (2d Cir.1989), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990) (barring claim that United States was negligent in failing to supervise undercover agent under intentional tort exception because claim was not "entirely independent" of the employment relationship); *Thigpen v. United States,* 800 F.2d 393, 395–96 (4th Cir.1986) (barring assertion of a negligent supervision claim against United States by children who were sexually assaulted by naval hospital employee).

However, the Ninth Circuit chose not to adopt the position of the *Shearer* plurality. *See Bennett,* 803 F.2d at 1503. Instead, it found subject matter jurisdiction under the FTCA in several cases involving claims of negligent hiring and supervision where a government employee committed assault or battery against the plaintiff. *See Morrill,* 821 F.2d at 1427; *Kearney,* 815 F.2d at 537; *Bennett,* 803 F.2d at 1505. These cases distinguish between negligence based entirely on a theory of **respondeat superior** (which cannot give rise to liability on the part of the United States under the FTCA for the intentional torts of government employees) and independent negligent acts or omissions by the government that are proximate causes of the harm (which can give rise to liability on the part of the United States under the FTCA for the intentional torts of government employees). *See Bennett,* 803 F.2d at 1504. In the case of the latter, this court has held that granting broad immunity would be inconsistent with the purpose of the FTCA, which is to "provide a forum for the resolution of claims against the federal government for injury caused by the government's negligence." *Id.*

In *Sheridan,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352, the Supreme Court again addressed the issue of the scope of the "assault and battery" exception where the assailant is a government employee. There, an intoxicated, off-duty serviceman fired a rifle into a car on a public street, injuring the plaintiff (who was not a government employee). Earlier in the evening, a group of navy

corpsmen had attempted to take the serviceman to an emergency room but fled when he brandished a weapon at them, and they did not take any further action. The Court held that the government could be held liable under the FTCA notwithstanding the "assault and battery" exception because it negligently carried out the good Samaritan duties it had assumed when the navy corpsmen tried to take the assailant to the emergency room. *Id.* at 401, 108 S.Ct. at 2455. The Court also based its decision on the existence of a regulation prohibiting possession of a firearm on a naval base and requiring all personnel to report the presence of any firearm. This regulation, the Court held, created a duty on the part of the government which it performed negligently. *Id.*

In *Sheridan* the Court found subject matter jurisdiction under the FTCA based on negligent acts or omissions on the part of the government that were unrelated to the employment relationship with the assailant. However, while the Court implied that it did not favor government liability under the FTCA in cases involving claims of negligent hiring and supervision, it explicitly declined to address this question. *See id.* at 403 n. 8, 108 S.Ct. at 2456 n. 8 ("Because [the assailant's] employment status is irrelevant to the outcome, it is not appropriate in this case to consider whether negligent hiring, negligent supervision, or negligent training may ever provide the basis for liability under the FTCA for a foreseeable assault and battery by a government employee.")

Further, this court has held recently that *Bennett* is still good law and that "the assault and battery exception does not immunize the Government from liability for negligently hiring and supervising an employee." *Brock v. United States*, 64 F.3d 1421, 1425 (9th Cir. 1995). Thus, the district court in this case incorrectly held that *Bennett* and the cases that followed it, *Kearney* and *Morrill*, were overruled by *Sheridan*.

## B. Application of the Assault and Battery Exception in this Case

■ Under *Bennett, Kearney,* and *Morrill,* the district court has subject matter jurisdiction over Senger's negligent hiring and supervision claims. Senger's claim of negligence in hiring and retaining Brown is governed by this court's decision in *Bennett.* In *Bennett,* the court held that the United States had waived immunity with respect to a claim alleging negligent hiring. *See* 803 F.2d at 1505. The case arose from the kidnapping and raping of several children from a Bureau of Indian Affairs Boarding School by a teacher hired by the U.S. government. The plaintiffs alleged that the government knew or should have known of the assailant's history of child molestation and that the government's negligent failure to conduct reasonable investigation when it hired the teacher was a proximate cause of the injury. *Id.* at 1504. Senger makes a similar allegation with respect to Brown, arguing that the government knew of Brown's violent disposition well before Brown assaulted him and negligently retained Brown in spite of this knowledge, thus proximately causing the assault to occur.

Senger's negligent supervision claim is governed by this court's holding in *Morrill.* There, the plaintiff was a "go-go dancer" who was hired by the Navy to perform at an enlisted man's club. During a break, she was beaten and raped by an enlisted man in the women's restroom. The dancer alleged that the Navy was negligent in failing to adequately supervise the enlisted men and that it should have known that "the combination of drunken sailors and a scantily clad performer was explosive." *Morrill,* 821 F.2d at 1426. The court held that the "assault and battery" exception to the FTCA did not make the government immune from such a claim. *Id.* at 1427. In this case, Senger was a business invitee, like the plaintiff in *Morrill,* who was invited by the Postal Service to tow the car of an employee with a history of violent behavior. Senger's allegation that the Postal Service failed to provide adequate supervision to a business invitee in a situation where Brown's violent behavior might have been predicted is analogous to the negligence alleged in *Morrill* and therefore does not fall under the "assault and battery" exception to the FTCA.

We reverse the district court's finding that it lacked subject matter jurisdiction with re-

spect to Senger's negligent hiring and supervision claims.

## II. *Summary Judgment on Negligent Failure to Warn Claim*

Summary judgment is properly granted when there is no genuine issue of material fact and the district court has applied the law correctly. *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420 (9th Cir.1990). We may uphold summary judgment with respect to Senger's negligent failure to warn claim only if the attack was unforeseeable as a matter of law, that is, if no reasonable jury could find that the attack on Senger was foreseeable. *Lindahl v. Air France*, 930 F.2d 1434, 1436 (9th Cir.1991). Senger is not required to *prove* that the attack was foreseeable in order to overcome a motion for summary judgment. Rather, he need only "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The burden is on the party moving for summary judgment to establish that there is no genuine issue of material fact. *Id.* Because Senger has presented specific facts indicating that the Post Office had actual or at least constructive knowledge of Brown's violent past conduct, there is a genuine dispute with respect to the foreseeability of Brown's assault on Senger, which is a key issue under the applicable negligence law. Thus, the district court erred in granting summary judgment on the grounds that the Postal Service could not have foreseen the assault.

■ Senger's claim of negligent failure to warn is governed by Oregon law because the alleged acts of negligence occurred in Oregon. *See* 28 U.S.C. § 1346(b). Oregon law provides that a defendant may have a duty to warn either by virtue of a special relationship between the plaintiff and the defendant or because of a general requirement to avoid conduct that unreasonably creates a foreseeable risk to the plaintiff. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 734 P.2d 1326, 1336 (1987). A possessor of land has a duty to warn business invitees of the intentional acts of third parties "if he knows or has reason to know that the acts of the third person are occurring, or are about to occur."

*Whelchel v. Strangways*, 275 Or. 297, 550 P.2d 1228, 1231–32 (1976) (adopting Restatement of Torts 2d, § 344 & cmt. f).

■ In this case, there appears to be no dispute that Senger had a special relationship with the government as a business invitee. Thus, the United States was negligent in failing to warn Senger if the Postal Service knew or had reason to know that the assault was about to occur. Senger has presented extensive evidence of violent behavior and mental instability on the part of Brown which the United States apparently does not dispute. Senger also asserts that the Post Office had actual knowledge of Brown's violent past because of an internal investigation conducted by the Post Office after Brown was arrested while on the job. Further, the United States' own affidavit indicates that this internal investigation gave rise to a recommendation to dismiss Brown. While the Post Office may not have been aware of every violent incident listed in Senger's pleadings and supporting affidavits, Senger has presented enough specific facts to create a genuine issue of fact concerning the foreseeability of the assault.

The district court granted summary judgment because many of the violent acts committed by Brown involved domestic violence whereas this case does not. Although Oregon law does require that the act giving rise to the complaint be of the same type as past acts that make the act foreseeable, the Oregon Supreme Court has made clear that "foresight does not demand the precise mechanical imagination of a Rube Goldberg." *Fazzolari*, 734 P.2d at 1338. Rather, "the concept of foreseeability refers to generalized risks of the type of incidents and injuries that occurred rather than predictability of the actual sequence of events." *Id.* A reasonable jury could conclude that some of Brown's past acts of violence were similar to his attack on Senger, reflecting a tendency to become violent when angry.

Given that Senger has presented specific facts suggesting that the Post Office may have been aware of Brown's history of violent behavior and serious and chronic mental instability, the district court erred in finding as a matter of law that Brown's assault on

Senger could not have been foreseen. We therefore reverse the district court's decision to grant summary judgment in favor of the United States with respect to Senger's negligent failure to warn claim.

### III. *Discretionary Function Under FTCA*

The United States argues that even if Brown's behavior was foreseeable, the decision to warn members of the public like Senger of Brown's dangerous propensities falls under the discretionary function exception to the FTCA and, therefore, that the district court does not have subject matter jurisdiction over this claim. *See* 28 U.S.C. § 2680(a) [3]. The district court did not address this issue, instead granting summary judgment with respect to the failure to warn claim based on the lack of foreseeability of Brown's conduct. Although we may affirm the district court's grant of summary judgment on any grounds supported by the record, *Oscar v. University Students Co-op. Ass'n,* 965 F.2d 783, 785 (9th Cir.1992), the record in this case with respect to the discretionary exception does not provide an adequate basis to affirm.

The Supreme Court has established a two-part test for applying the discretionary function exception. First, does the conduct "involve an element of judgment or choice?" *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). For instance, if there is a federal statute or regulation that prescribes a course of action for an employee to follow, the discretionary function exception does not apply. *Id.* Second, would liability give rise to "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy?" *Id.* at 537, 108 S.Ct. at 1959.

The determination of whether an act or omission falls under the discretionary function exception "requires a particularized and fact-specific inquiry." *Prescott v. United States,* 973 F.2d 696, 703 (9th Cir.1992). Although the burden is on the plaintiff to persuade the court that it has subject matter jurisdiction under the FTCA's general waiver of immunity, *id.* at 700, "the United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity." *Id.* at 702. Thus, this court has declined to affirm summary judgment on the basis of the discretionary function exception when the record is insufficiently developed. *See Seyler v. United States,* 832 F.2d 120, 123 (9th Cir.1987).

In this case, the United States has argued in both the district court and on appeal that the negligent failure to warn claim is barred by the discretionary function exception. However, while the United States has mentioned in passing that the decision to warn the public of violent employees would involve policy issues, there is no evidence in the record showing that the "specific acts of negligence [alleged here] flowed directly from the policy choices" of Postal Service employees. *See Prescott,* 973 F.2d at 703. Therefore, we remand to the district court for consideration of this issue.

### CONCLUSION

For the foregoing reasons, we reverse the holding of the district court that it does not have subject matter jurisdiction over Senger's negligent hiring and supervision claims. We further hold that because the assault on Brown may have been foreseeable, the district court improperly granted summary judgment in favor of the United States. Finally, because the district court failed to address the question of whether any duty the Postal Service might have had to warn those in Senger's position of its employees' violent tendencies falls under the discretionary function exception to the FTCA, we remand for further consideration of this question.

WALLACE, Circuit Judge, concurring and dissenting:

I concur in part I of the majority opinion, respectfully dissent to part II, and would not reach the issues decided in part III.

Questions of fact, like foreseeability, are issues for the jury and are generally inappropriate to decide on summary judgment.

---

**3.** 28 U.S.C. § 2680(a) provides that the United States is not liable for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

*Thomas v. Newton International Enterprises,* 42 F.3d 1266, 1269 (9th Cir.1994). There are, however, cases where the allegedly tortious act is so remote that Oregon courts have ruled the act unforeseeable as a matter of law. *See, e.g., Uihlein v. Albertson's, Inc.,* 282 Or. 631, 580 P.2d 1014 (1978) (*Uihlein*). I have carefully considered that portion of Brown's history of violent acts known to the Postal Service or which the Postal Service reasonably should have known. There is no genuine issue of material fact of whether the harm Senger suffered was foreseeable under Oregon law. *Neely v. St. Paul Fire and Marine Ins. Co.,* 584 F.2d 341, 345 (9th Cir. 1978) ("[i]n defining the primary rights and obligations of parties in a diversity suit arising from state law, including elements of a plaintiff's cause of action, we are, of course, obligated to apply the substantive law of the state"). I conclude as a matter of law that Brown's attack was unforeseeable and would affirm the district court's rejection of Senger's claim of negligent failure to warn. *See Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

Oregon law provides that a defendant may have a duty to warn either by virtue of his special relationship with the plaintiff or because of a general requirement to avoid conduct that unreasonably creates a foreseeable risk to the plaintiff. *Fazzolari v. Portland School Dist. No. 1J,* 303 Or. 1, 734 P.2d 1326, 1338 (1987) (*Fazzolari*). The Postal Service owed Senger, a business invitee, a duty to warn him of the intentional acts of third persons "if [the Postal Service] kn[ew] or ha[d] reason to know that the acts of the third person [were] occurring, or [were] about to occur." *Whelchel v. Strangways,* 275 Or. 297, 550 P.2d 1228, 1232 (1976) (*Whelchel*) (quoting and adopting as Oregon law Restatement of Torts 2d § 344 and comment f). The majority apparently rules that the Postal Service owed a duty to warn Senger because he was a business invitee and not because there was general foreseeability. I will limit my discussion, therefore, to whether as a matter of law Brown's actions were foreseeable under the duty to warn business invitees.

The Oregon courts have specifically adopted section 344, comment f, of the Restatement (Second) of Torts, which gives initial guidance as to what types of acts come within a business owner's duty to warn business invitees. *Id.* The comment states that an owner of a property "is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur."

The illustrations to comment f identify certain intentional acts that a business owner should "reasonably anticipate." These acts, which fall within the duty to warn, are foreseeable, predictable behaviors with established histories, like rush hour crowding in railroad cars. Thus, section 344 raises a preliminary question of whether the Postal Service actually owed a duty to warn, regardless of whether Brown's act was foreseeable in this instance. The majority does not solve this problem for us. In any case, Oregon case law states that in order to be legally foreseeable, a harm must be of the type or kind of harm that could be anticipated from the allegedly tortious conduct. *See Ollison v. Weinberg Racing Ass'n,* 69 Or.App. 653, 688 P.2d 847, 851 (1984) (*Ollison*) ("the question is whether the harm is of the general kind to be anticipated from the conduct").

I focus only on whether Brown's act itself was legally foreseeable. The initial inquiry is what the Postal Service actually knew or should have known of Brown's history at the time of the attack on Senger. The majority asserts that although "the Postal Service may not have been aware of every violent incident listed in Senger's pleadings and supporting affidavits, Senger has presented enough specific facts to create a genuine issue of fact concerning the foreseeability of the assault."

The record establishes that the Postal Service knew in January of 1986 that Brown had several, unspecified arrests and two misdemeanor convictions: resisting a police officer in 1971 and harassment in 1977. Further, there was an internal investigation resulting in a recommendation that Brown be dismissed due to his failure to state his misdemeanor convictions on his job application form. Last, Brown was arrested at work in 1985 on a charge of assault against his ex-girlfriend. Thus, the majority's position is either that Brown's attack was foreseeable

from knowledge of the unspecified arrests, the specified arrest, and misdemeanors, or that Brown's complete history should have been known to the Postal Service and that the complete history made the attack foreseeable.

I cannot accept, as a legal proposition, that knowledge of misdemeanor offenses, unspecified arrests, and false submissions on job applications gives rise to a genuine issue of fact of whether Brown's attack was foreseeable. The facts known to the Postal Service hardly establish Brown's act as the type of predictable, regular behavior which, under the Restatement and Oregon case law, a rational jury could find foreseeable. *See Lindahl v. Air France*, 930 F.2d 1434, 1436 (9th Cir.1991). Numerous factors support my conclusion.

First, as stated above, the record indicates that the Postal Service had a far from complete knowledge of Brown's mental instability and violent behavior, nor did the Postal Service have reason to investigate his violent tendency, since his work behavior was spotless.

Second, the events the Postal Service knew or should have known (the two misdemeanor convictions, the unspecified arrests, and the on-the-job arrest in 1985 for assault of his ex-girlfriend) all occurred between 6 and 20 years prior to the attack. These acts' temporal remoteness do not establish that Brown was regularly violent, nor do they even establish a material fact as to whether Brown would be violent on the job. The duty to warn only extends to those harmful intentional acts of third persons that "are occurring, or are about to occur." *Whelchel*, 550 P.2d at 1232. Considering the temporal remoteness of Brown's past violent acts, it cannot be said that his attack on Senger was "about to occur."

Third, the Postal Service's January 1986 internal investigation of Brown revealed he had a number of arrests and two misdemeanor convictions; however, that investigation was directed at whether Brown had falsified his employment record. There is no evidence that the investigation put the Postal Service on notice of Brown's violent behavior.

Last, if we were to attribute knowledge of Brown's full history constructively to the Postal Service, the Postal Service would only know of Brown's violent temperament *outside* the work environment. His behavior on the job displayed absolutely no tendency toward violence. While Oregon law does not require that the harm be foreseeable with "Rube Goldberg"-like precision, *see Fazzolari*, 734 P.2d at 1338, it does require that the general type of injury be foreseeable. *See Uihlein*, 580 P.2d at 1019; *Ollison*, 688 P.2d at 851. Given the Postal Service's actual knowledge, and even the knowledge it should have had, the Postal Service could not foresee the type of on-the-job violence which occurred here.

Because Brown's acts were unforeseeable, I would not reach the question of the Postal Service's discretionary functions under the Federal Tort Claims Act.