**Joyce WILSON, individually, and a/n/f of Jill Carpenter and Blake Carpenter, Appellant,**

v.

**Ricque BRISTER, M.D., Appellee.**

No. 01–96–00588–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 23, 1998.

Carron L. Haight, Charles C. Osburn, Houston, for appellant.

Frank N. Luccia, Houston, for appellee.

SCHNEIDER, C.J., and ANDELL and NUCHIA, JJ.

## OPINION

ANDELL, Justice.

The appellant, Joyce Wilson, appeals from a take-nothing summary judgment in favor of the appellee, Dr. Ricque Brister. We reverse and remand.

On October 29, 1991, Dr. Brister treated Wilson's daughter, Erin Carr, for depression. That visit was the only time Dr. Brister treated Carr. On November 15, 1991, Carr shot herself in the head. A friend, Ryan Weigand, had given Carr his father's gun and bullets.[1]

Wilson brought a wrongful death and survival action against Dr. Brister, alleging Dr. Brister did not exercise the degree of care that an ordinary and prudent physician would have exercised under the same or similar circumstances. Specifically, Wilson complained Dr. Brister negligently caused Carr's death by: (1) not diagnosing, caring for and treating Carr for depression; (2) not performing an adequate psychiatric assessment; (3) not taking appropriate measures after assessment; (4) not carefully questioning Carr about her thoughts regarding suicide; (5) not involving medical and nonmedical personnel trained in management of suicidal behavior such as Carr's; (6) not hospitalizing decedent for suicidal ideations; (7) not hospitalizing Carr in a psychiatric unit for continuous supervision and observation; and (8) not hospitalizing Carr for clinical depression.

Dr. Brister moved for summary judgment solely on the basis that Wilson could not prove proximate cause. In support, Dr. Brister offered an excerpt from his own deposition testimony in which he read his session notes in their entirety. Dr. Brister's notes did not indicate Carr ever mentioned Weigand, a gun, or the possibility that anyone might help her commit suicide.[2] Dr. Brister argued this evidence proved Weigand's acts were an unforeseeable, superceding, intervening criminal act that absolved Dr. Brister as a matter of law.

As further support, Dr. Brister offered the pleadings from a negligence suit Wilson had filed, but later settled, against Weigand and his father. The pleadings alleged Weigand gave Carr a gun, knowing she intended to commit suicide. The pleadings also asserted Weigand pleaded guilty in juvenile court to aiding and abetting Carr's suicide. Dr. Brister argued these assertions were admissions by Wilson that Weigand committed an unforeseeable, superceding, intervening criminal act.

---

1. Wilson admits Weigand stipulated to aiding and abetting suicide at a juvenile proceeding. The stipulation is not a part of our record.

2. Dr. Brister's notes did reveal that Carr had attempted suicide twice. Dr. Brister quoted Carr as saying: "I feel [suicidal] a lot and want to do it so bad, but I hate pain."

In response to the motion, Wilson argued Dr. Brister was not entitled to summary judgment because: (1) proximate cause is a fact question exclusively for the jury; (2) Weigand's acts did not absolve Dr. Brister as a matter of law, as more than one proximate cause can exist; and (3) she raised a fact issue on whether Dr. Brister was a proximate cause of Carr's death. In support of the fact issue, Wilson offered excerpts from Dr. Brister's deposition. Therein, Dr. Brister stated that the goal of hospitalizing a patient with suicidal ideations was to prevent suicide. She acknowledged Carr's history of suicide attempts, drugs, alcohol, and depression, and conceded that those factors increase the risk of suicide. She asserted that she would have hospitalized Carr if Carr were imminently suicidal, but denied she was imminently suicidal. He noted Carr told her, "I feel that way [suicidal] a lot. I want to do it so bad, but I hate the pain," and acknowledged that her suicide was 14 days after their visit.

The court granted Dr. Brister's motion and rendered judgment that Wilson take nothing.

In her first point of error, Wilson contends the court erred in granting summary judgment because she showed there was a genuine issue of material fact regarding proximate cause. In her second point of error, Wilson contends the court erred by not making reasonable inferences from her summary judgment evidence.

### Standard of Review

We review the rendition of summary judgment under the following standards: (1) the summary judgment movants have the burden of showing there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action and that the movants are entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovants is taken as true; and (3) every reasonable inference is indulged in favor of the nonmovants and any doubts resolved in their favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *see* TEX.R.CIV.P. 166a(b).

### Proximate Cause

Dr. Brister sought to conclusively disprove proximate cause. Proximate cause has two elements, cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). Dr. Brister argued Weigand's criminal acts were unforeseeable as a matter of law.

Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Id.* at 98. Foreseeability does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence. *Id.* The injury need only be of a general character that a person in the defendant's position might reasonably anticipate. *See Brown v. Edwards Transfer Co., Inc.*, 764 S.W.2d 220, 224 (Tex.1988).

More than one action may be the proximate cause of the same injury. *Brookshire Bros., Inc. v. Lewis*, 911 S.W.2d 791, 793 (Tex.App.—Tyler 1995, writ denied). Negligence of one does not excuse the negligence of another. *Id.;* RESTATEMENT (SECOND) OF TORTS § 439 (1977). Where both the actor's negligent conduct and that of a third person bring about the injury, the rule of concurrent causation applies. *See Atchison v. Texas & Pac. Ry.*, 143 Tex. 466, 186 S.W.2d 228, 231 (1945). All persons who contribute to the injury are liable. *Berry Property Management, Inc. v. Bliskey*, 850 S.W.2d 644, 655 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.). The intervening cause of the plaintiff's injury, even if unforeseeable, may be a concurring cause if the chain of causation flowing from the defendant's original negligence is continuous and unbroken. *Henry v. Houston Lighting & Power Co.*, 934 S.W.2d 748, 753 (Tex.App.—Houston [1st Dist.] 1996, writ denied); *see Bell v. Campbell*, 434 S.W.2d 117, 122 (Tex. 1968).

As a general rule, criminal conduct of a third party is a superseding cause that extinguishes liability of previous negligent actors. *El Chico Corp. v. Poole*, 732

S.W.2d 306, 313 (Tex.1987). However, when the criminal conduct is a foreseeable result of the prior negligence, the criminal act does not truncate the previous tortfeasor's liability. *See Nixon,* 690 S.W.2d at 550.

Dr. Brister offered summary judgment evidence that Carr never mentioned Weigand, a gun, or the fact that people would help her commit suicide. Were we to apply the criminal conduct rule mechanically, that evidence would bar negligence recovery because it conclusively proved Weigand's actions were unforeseeable.

■ However, Weigand's actions did not necessarily truncate the causative flow, if any, Dr. Brister set in motion. *See El Chico,* 732 S.W.2d at 309–10, 314 (rejecting absolute no-liability rule in assessing tavern's liability to third party injured by customer-drunk driver). By its very nature, *aiding and abetting* a suicide presumes a cooperative effort between the "victim" and the criminal actor. The criminalized act is one of contribution to an ongoing stream of the victim's suicidal inclination. Because the criminal act does not truncate the pre-existing causative flow, it should not absolve a previous tortfeasor's liability. To hold otherwise would yield an absurd result: we would immunize a negligent psychiatrist whose patient committed suicide with a borrowed a gun when the gun lender knew she intended suicide, but not when the lender was ignorant of that intent. Likewise, we would not immunize a negligent doctor whose patient shot herself with her own gun, but would immunize one whose patient borrowed a gun from a knowing friend. Barring Wilson's claim because of Weigand's actions would wrongly avoid the true issue in this case, the foreseeability of the suicide and the reasonableness of Dr. Brister's efforts to prevent it.

■ Though Dr. Brister offered proof of *an* intervening cause, she did not conclusively prove that her negligent acts or omissions were not a concurring cause. Because a causation issue remained, the appellee did not prove entitlement to summary judgment as a matter of law.

We sustain the appellant's first point of error.

We reverse the judgment and remand the cause to the trial court.

SCHNEIDER, C.J., dissents.

SCHNEIDER, Chief Justice, dissenting.

I would hold that the court did not err by granting summary judgment and that Dr. Brister proved the injury inflicted on his patient was directly and proximately caused by the unforeseeable, superceding, intervening, and intentional criminal act of a third party as a matter of law. Therefore, I respectfully dissent.

Generally, a person's criminal conduct is a superceding cause that extinguishes liability of a negligent actor. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex.1987). In *Chapman v. Oshman's Sporting Goods, Inc.,* 792 S.W.2d 785, 787 (Tex.App.—Houston [14th Dist.] 1990, writ denied), a wrongful death action was brought against a sporting goods store that sold a pistol to a man who subsequently used the pistol to commit murder. The court of appeals applied the standards for appellate review of a summary judgment, taking the nonmovant's evidence as true and indulging all reasonable inferences in the non-movant's favor, and found that an essential element of the plaintiff's cause of action failed as a matter of law:

> Even assuming, arguendo, that Oshman's was directly ... negligent in the sale of the gun, Buede's criminal conduct was a superceding cause that relieved Oshman's of liability. Once Oshman's presented as summary judgment evidence a certified copy of Buede's guilty plea and judgment of conviction for first degree murder, appellants could defeat Oshman's motion for summary judgment only by presenting evidence that raises a factual issue as to whether Buede's criminal conduct was foreseeable.

*Chapman,* 792 S.W.2d at 787 (citing *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 550 (Tex.1985)).

Dr. Brister is liable only if she realized, or should have realized the likelihood that Carr's friend, Ryan Weigand, would help Carr kill herself. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992) (citing RESTATE-

MENT (SECOND) OF TORTS § 448 (1965)). Section 448 provides:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the negligent actor's conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct *realized or should have realized* the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

RESTATEMENT (SECOND) OF TORTS § 448 (1965). Thus, under section 448, the intervening criminal conduct, not merely the injury itself, must be reasonably foreseeable.

As the majority acknowledges, Dr. Brister offered summary judgment proof that Weigand unlawfully provided the weapon used in the suicide. Dr. Brister thereby presented proof of an intentional criminal act and established a superceding cause.

Dr. Brister also introduced notes from the one and only doctor-patient interview that occurred two weeks before Carr committed suicide. At no point during the interview did Carr suggest that an acquaintance of hers had ever encouraged her to commit suicide. Carr provided no information to her doctor about a friend named Ryan Weigand in her interview. Nowhere in the interview did the patient give any indication that she could get access to a gun from another person. Furthermore, Dr. Brister made an appointment to see Carr the following week, and referred her to another mental health provider for therapy sessions.

In order to overcome a motion for summary judgment that alleges nonexistence of a material fact, the nonmovant, "must present summary judgment proof when necessary to establish a fact issue." *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). Wilson did not meet this burden. Her summary judgment response focused on the foreseeability of Carr's suicide—not on the foreseeability of the crime. She presented no evidence that Weigand's

conduct, or any other criminal conduct was foreseeable.

Arguably, any negligence that results in injury causes that injury. Yet, to justify compensation, the injury must be a probable result of the defendant's negligence. That Dr. Brister knew Carr had previously tried to kill herself does not mean she should have realized someone would unlawfully encourage and assist Carr in accomplishing the act. Dr. Brister presented unanswered summary judgment proof that her conduct was, at most, an indirect cause, and her conduct did nothing more than provide the opportunity for Weigand's unforeseeable criminal conduct.

Accordingly, I would hold Dr. Brister disproved proximate cause as a matter of law and would affirm the trial court's judgment.