Opinion issued October 2, 2003













In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00813-CV




PATRICIA SHAIKH, Appellant

V.

AEROVIAS DE MEXICO, Appellee




On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2000-50896




O P I N I O N
           Appellant, Patricia Shaikh, sued appellee, Aerovias de Mexico (Aeromexico), for
damages, alleging unlawful retaliation and sexual harassment after Shaikh was terminated
from her employment as a station manager for Aeromexico. The trial court granted summary
judgment in favor of Aeromexico on Shaikh’s claims and ordered that Aeromexico recover
$4,960.65 in costs. Shaikh appeals, challenging the summary judgment and the post-judgment order awarding costs. We affirm the judgment but reverse the order awarding
costs. 
BACKGROUND
           Shaikh began working for Aeromexico in 1986 and, in November 1995, was promoted
to station manager of Aeromexico’s facility in San Diego. In December 1998, Aeromexico
conducted an audit of telephone invoices and administrative functions that had previously
been handled by an accountant who had resigned. The audit revealed high telephone usage
in the San Diego station, as compared with the usage at other stations its size. In particular,
there were a large number of calls from San Diego to Puebla, Mexico. Aeromexico does not
operate flights from San Diego to Puebla, Mexico. Spot checks of the calls established that
they were personal calls. Aeromexico then requested MCI, its long-distance vendor, to
provide a detailed call record for 1998. Aeromexico compiled a list of questionable calls and
contacted Shaikh to discuss the matter. Shaikh admitted that the calls were personal calls she
had made to her sister and others in Mexico. The total cost of the calls was $2,560.63, and
Shaikh had not reimbursed Aeromexico for the calls. Shaikh was suspended on January 25,
1999.
           Aeromexico had a World Sales and Airports Conference in Mexico City from January
13 through 15, 1999. Shaikh attended the conference on January 13 and 14, but she did not
attend a station managers’ meeting on January 15 and did not report the day as time off. This
problem was also discovered before Shaikh’s suspension.
           After Shaikh’s suspension, Aeromexico discovered that in March and September
1998, Shaikh had issued award letters to Patricia Delgado, an employee of a service provider
to Aeromexico. Each of these letters entitled Delgado to a free round-trip ticket, which could
be used by her or a family member. Notations on the letter indicate that they were used by
Ofelia Kruessi, Delgado’s cousin. Both award letters were signed, “OK PShaikh.” In fact,
Kruessi was not Delgado’s cousin, but Shaikh’s sister, and Shaikh knew that Kruessi’s use
of the free pass was a violation of Aeromexico’s policy. In addition, reserved, coach-class
tickets, rather than the usual space-available or stand-by tickets, were issued on these letters.
           In February 1999, Shaikh was terminated. Shaikh claims that her termination resulted
from her refusal of the repeated sexual advances of then Senior Vice President of the United
States Division for Aeromexico, Harald Bomberg. The sexual advances that she alleged in
her petition were as follows: 
           (1)      At Aeromexico’s 10th Anniversary Celebration in Mexico City on October 31,
1998:
 
                      (a)      Bomberg made unwanted, repeated invitations to go dancing;
 
                      (b)      he stated to her, “You look great with that dress, you look very pretty”; 
 
                      (c)      he requested that Shaikh go back to his hotel room while in Mexico
City, saying he allegedly had some papers for her in his hotel room; 
 
                      (d)      he stated to Shaikh, “If you go to the hotel, call me”; 
 
                      (e)      he stated to Shaikh, “You are very attractive tonight,” and “You always
look great”; and
 
                      (f)       he made it very clear that he wanted to sleep with Shaikh; and
 
           (2)      At the World Aeromexico Sales and Airports Conference in Mexico City on
January 13-15, 1999: 
 
                      (a)      Bomberg stated to Shaikh, “You always look great,” and “Are we going
dancing this time in Mexico?”; 
 
                      (b)      he insisted that Shaikh accompany him at the dinner table and
“attended” to her like a date or companion; 
 
                      (c)      he touched Shaikh’s knee under the table; 
 
                      (d)      he grabbed Shaikh’s hand and then said, “Now you are going to dance
with me”; and
 
                      (e)      he leaned over Shaikh, holding her by her shoulders and pulling her
into his chest.

            Shaikh did not make any complaints, either formally or informally, about the alleged
advances while she was employed at Aeromexico. Eight days after her termination, Shaikh
filed a sexual-harassment complaint with the California Department of Fair Employment and
Housing. She received a right-to-sue notice from the U.S. Equal Opportunity Commission
and filed suit in California. She also filed a lawsuit in Mexico, asserting some of the same
allegations. The California court dismissed Shaikh’s lawsuit for forum non conveniens, and
Shaikh refiled her lawsuit in Texas.


 Shaikh voluntarily dismissed the lawsuit in Mexico
after the trial court in Houston stayed the Texas action pending resolution of the Mexico
lawsuit. 
           The trial court granted Aeromexico’s rule 166a(c) and rule 166a(i) motion for
summary judgment, signed a final judgment after both parties non-suited all remaining
claims, and entered an order awarding costs to Aeromexico. The order awarding costs
included the costs of taking depositions, including videotaped depositions, obtaining copies
of deposition transcripts and videotapes, making copies of litigation documents, and the
airfare for Aeromexico’s counsel to attend the deposition of Bomberg in Spain. Shaikh
appeals the summary judgment and the order awarding costs. 
DISCUSSION
Summary Judgment
           In her first point of error, Shaikh contends that the trial court erred in granting
summary judgment on her claims of retaliation and sexual harassment because she
established a prima facie case for both causes of action.
           Under rule 166a(i) of the Texas Rules of Civil Procedure, a party may move for
summary judgment if there is no evidence of one or more essential elements of a claim or
defense on which an opposing party would have the burden of proof at trial. Tex. R. Civ. P.
166a(i). A trial court must grant a no-evidence motion for summary judgment if the
nonmovant cannot produce more than a scintilla of evidence raising a genuine issue of
material fact. Flameout Design & Fabrication Inc. v. Pennzoil Caspian Corp., 994 S.W.2d
830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). On review, we examine the record
in the light most favorable to the nonmovant. Id. 
           In a rule 166a(c) motion for summary judgment, the movant has the burden of
showing that there is no genuine issue of material fact as to one or more of the essential
elements of the plaintiff’s cause of action. Tex. R. Civ. P. 166a(c). Evidence favorable to
the nonmovant is taken as true, and doubts are resolved in the nonmovant’s favor. Wilson v.
Brister, 982 S.W.2d 42, 44 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). The movant
must be granted summary judgment if he disproves, as a matter of law, at least one element
of each of the nonmovant’s causes of action or establishes each element of an affirmative
defense. Friendswood Dev. Co. v. McDade + Co., 926 S.W.2d 280, 282 (Tex. 1996).
           Aeromexico’s motion for summary judgment asserted, among other things, that there
was no evidence to show unwelcome sexual harassment, no evidence to show that any
harassment was so severe and pervasive that it affected a term of employment, and no
evidence linking Shaikh’s termination with the alleged harassment. 
           Shaikh brings her retaliation and sexual-harassment claims under California
Government Code section 12940. Cal. Gov’t Code §§ 12940-12951 (West 1992 & Supp.
2003). Therefore, we look to California law and federal decisions for guidance. See
Richards v. CH2M Hill, Inc., 29 P.3d 175, 183 (Cal. 2001) (holding that, because of
similarity of state and federal statutes, in Title VII lawsuits, California courts look to federal
decisions for guidance); see also Fields v. Teamsters Local Union No. 988, 23 S.W.3d 517,
524 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (noting that Texas Labor Code
section 21.055 is interpreted in accordance with parallel provisions of Title VII).     
           To establish a prima facie case for retaliation, a plaintiff must produce evidence that
(1) she engaged in a protected activity, (2) she suffered an adverse employment action after
engaging in the protected activity, and (3) her participation in the protected activity and the
adverse employment decision were causally connected. See Villiarimo v. Aloha Island Air,
Inc., 281 F. 3d 1054, 1064 (9th Cir. 2002). To establish a prima facie case for quid pro quo
sexual harassment, Shaikh had to prove that a tangible employment action resulted from a
refusal to submit to Bomberg’s advances. See Burlington Indus., Inc. v. Ellerth, 524 U.S.
742, 753, 118 S. Ct. 2257, 2265 (1998). Thus, a failure to produce some evidence of a causal
connection between Bomberg’s alleged advances and her termination would defeat both
claims. 
           Taking as true Shaikh’s allegations in her petition, and assuming, for the sake of
argument, that Shaikh engaged in a protected activity by opposing Bomberg’s sexual
advances and that the adverse employment decision was her termination, we look to Shaikh’s
summary judgment evidence to determine whether she produced more than a scintilla of
evidence of a causal connection between her termination and Bomberg’s advances. 
           In response to Aeromexico’s motion for summary judgment, Shaikh filed the
following summary judgment evidence:
           (1)      Aeromexico’s telephone records for the San Diego station, showing Shaik’s
personal calls to Mexico during 1998;
 
           (2)      the affidavit of Shaikh’s sister, Ofelia Kruessi, attesting to an encounter with
Bomberg in October 1998;
 
           (3)      the affidavit of Shaikh, reciting her complaints against Bomberg and
responding to Aeromexico’s complaints about her use of the free tickets and
her absence at a meeting; 
 
           (4)      the deposition of Steve Cochrane, regional manager for Aeromexico and one
of the managers who recommended Shaikh’s termination;
 
           (5)      the deposition of Bomberg;
 
           (6)      the memorandum informing Aeromexico personnel of Shaikh’s termination
and of the appointment of an acting manager; 
 
           (7)      the memorandum transmitting telephone records to Cochrane; 
 
           (8)      the Aeromexico policy on use of phone, mail, and telex systems;
 
           (9)      the deposition of Patricia Delgado, the service-provider employee who gave
the award-letter tickets to Shaikh’s sister; and 
 
           (10)    copies of the two tickets used by Shaikh’s sister.

           Shaikh does not deny that she charged $2,560.63 in personal calls from San Diego to
Mexico to the company during 1998 and did not reimburse the company. She admits that she
approved issuance of the round-trip flight passes in her sister’s name after having awarded
the passes to Delgado, but argues that it was Delgado who offered the use of the passes and
made the representation that Kruessi was Delgado’s cousin. However, Shaikh also admits
that she knew that the use of the passes was improper. Shaikh insists that the meeting she
did not attend was not a mandatory meeting, but admits that she did not report the day as
personal time off. 
           Shaikh’s termination notice stated that the reason for termination was loss of
confidence in her. Cochrane testified at his deposition that the reason for Shaikh’s
termination was “loss of confidence on the part of Aeromexico in her ability to manage
because she violated” company rules regarding use of company telephones, taking time off
and reporting it as time worked, and abusing pass privileges.
           Shaikh does not direct us to any evidence to support her contention that she was fired
in retaliation for her rejection of Bomberg’s advances. In her deposition, she admitted that
she had never complained to anyone at Aeromexico about Bomberg’s conduct, and the
summary judgment evidence does not show that the managers who ordered and conducted
the audit of the San Diego station had any knowledge of alleged improper conduct by
Bomberg or of complaints by Shaikh. At most, the evidence shows that Bomberg’s
involvement in Shaikh’s termination was limited to receiving the recommendation of
Cochrane, Steven Gomez (general manager of station operations), Rachel Zapien (human
resources manager), and Jose Quant (controller) that she be terminated, discussing the matter
in a meeting with Cochrane, Zapien, and Quant, and approving the termination. 
           We hold that Shaikh did not meet her burden of producing more than a scintilla of
evidence to establish a causal connection between her termination and her rejection of
Bomberg’s alleged advances. Accordingly, we overrule Shaikh’s first point of error.
           In her second point of error, Shaikh challenges the order awarding costs. Shaikh
claims that the costs awarded for (1) additional copies of pleadings, not required by law, (2)
videotaped depositions, and (3) airfare for Aeromexico’s counsel to attend the deposition of
Bomberg in Spain are not authorized by statute or common law. The costs awarded by the
trial court were based on a document titled, “Defendant’s Bill of Costs,” which was prepared
by Aeromexico’s counsel and attached to Aeromexico’s motion for entry of order of costs. 
The trial court awarded costs of $4,960.65, as requested.


 
           Under Section 31.007(b) of the Texas Civil Practice and Remedies Code, a court may
include in any order or judgment all costs, including, 
           (1)      fees of the clerk and service fees due the county;
 
           (2)      fees of the court reporter for the original of stenographic transcripts necessarily
obtained for use in the suit;
 
           (3)      masters, interpreters, and guardians ad litem appointed pursuant to the rules
and state statutes; and
 
           (4)      such other costs and fees as may be permitted by the rules and state statutes.

 Tex. Civ. Prac. & Rem. Code Ann. § 31.007(b) (Vernon 1997). 

           Rule 140 of the Rules of Civil Procedure restricts the cost of copies to be assessed
against a party to those copies required by law or the rules. See Tex. R. Civ. P. 140. Rule
141, however, provides that “the court may, for good cause, to be stated on the record,
adjudge the costs otherwise than as provided by law or by these rules.” Tex. R. Civ. P. 141. 
“Costs” usually refers to fees and charges required by law to be paid to the courts or some
of their officers, and the amount is fixed by statute or the court’s rules. Ex parte Williams,
866 S.W.2d 751, 753 (Tex. App.—Houston [1st Dist.] 1993) (orig. proceeding). “Costs,
within the meaning of Rules 125 through 149 are those items in the clerk’s bill of costs.” 
Pitts v. Dallas County Bail Bond Bd., 23 S.W.3d 407, 417 (Tex. App.—Amarillo 2000, pet.
denied); see also Tex. R. Civ. P. 125-149. 
           The allocation of costs is a matter for the trial court’s discretion and cannot be
overturned on appeal except for an abuse of discretion. Univ. of Houston–Clear Lake v.
Marsh, 981 S.W.2d 913, 914 (Tex. App.—Houston [1st Dist.] 1998, no pet.). However, the
issue in this case is not the allocation of costs, but the assessment of costs. See Whitley v.
King, 581 S.W.2d 541, 544-45 (Tex. Civ. App.—Fort Worth 1979, no writ) (noting that
power to tax costs does not include power to tax items normally not allowed). Generally, in
Texas, expenses incurred in prosecuting or defending a lawsuit are not recoverable as costs,
unless permitted by a statute or equitable principle. Phillips v. Wertz, 579 S.W.2d 279, 280
(Tex. Civ. App.—Dallas 1979, writ ref’d n.r.e.). 
           The costs of taking and filing a deposition are recoverable. Shenandoah Assocs. v.
J & K Props., 741 S.W.2d 470, 487 (Tex. App.—Dallas 1987, writ denied). However, the
rule providing for the taxing the costs for depositions does not include taxing the cost of
copies of depositions. See Tex. R. Civ. P. 203.2 (providing that deposition officer must file
sworn certificate stating, among other things, “the amount of the deposition officer’s charges
for preparing the original deposition transcript, which the clerk of the court must tax as
costs). In addition, travel costs are not included. See Wallace v. Briggs, 348 S.W.2d 523,
527 (Tex. 1961). 
           The copies of deposition transcripts, videotapes, and litigation documents listed in
Aeromexico’s Bill of Costs are not required by law and are part of the expenses of litigation. 
Therefore, they are not properly taxable as costs. If any of the deposition costs listed in
Aeromexico’s Bill of Costs were the court reporter’s charges for preparing the original
deposition transcript, a certificate as required by rule 203.2(f) should have been filed with
the Harris County District Clerk. 
           We sustain Shaikh’s second point of error.
 

CONCLUSION
           We affirm the judgment of the trial court. We reverse the post-judgment order
awarding costs and remand the cause for the award of costs consistent with this opinion. 
 
 
                                                                  Sam Nuchia
                                                                  Justice

Panel consists of Justices Hedges, Nuchia, and Higley.