NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1303n.06

No. 11-6079

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Dec 19, 2012*
DEBORAH S. HUNT, Clerk

ESTATE OF EZRA GERALD SMITH, by
and through the Administratrix of his Estate,
Renee Richardson; RENEE RICHARDSON,
Individually,

        Plaintiff-Appellant,

        v.

UNITED STATES OF AMERICA,

        Defendant-Appellee.

On Appeal from the United
States District Court for the
Western District of Kentucky

_____/

Before:      GUY and CLAY, Circuit Judges; HOOD, District Judge.[*]

**DENISE PAGE HOOD, District Judge**. Appellant, the Estate of Ezra Gerald Smith (the

"Smith Estate") By and Through the Administratrix of His Estate, Renee Richardson ("Richardson"),

appeals an Order Granting the United States of America's Motion to Dismiss for lack of subject

matter jurisdiction and failure to state a claim upon which relief may be granted.  For the reasons set

forth below, the district court's order is **AFFIRMED**.

**I.**

---

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan,
sitting by designation.

On October 20, 2010, the Smith Estate filed a Complaint pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1) and 2674 alleging three causes of action: Medical Negligence (Count I); Gross and Flagrant Negligence and Disregard of the Department of the Army (Count II); and, Loss of Consortium and Pain and Suffering of Richardson. (Comp., Page ID ##1–7) In lieu of an Answer, the Government filed a Motion to Dismiss for lack of jurisdiction and later filed a Motion to Dismiss Pursuant to the Discretionary Function Exception. Responses and replies were filed. On September 2, 2011, the district court entered a Memorandum Opinion and Order granting the United States' two motions and dismissing the Complaint.

Jurisdiction is proper under 28 U.S.C. §§ 1331, 1346. The Smith Estate timely filed a notice of appeal and this court has appellate jurisdiction over final orders under 28 U.S.C. § 1291.

## II.

This case stems from tragic events resulting in the death of a young man who was only 18-years of age. At the time of Smith's death, he and his mother, Richardson, were temporarily housed at Fort Bliss, El Paso, Texas as a family of an active member of the United States Armed Forces. (Page ID #2, ¶ 2) On April 24, 2009, while walking to school on the property of the Army supplied housing, Smith was shot to death by Spc. Gerald Polanco ("Polanco"), a Military Police Officer stationed at Fort Bliss. (Page ID #2, ¶ 5; Page ID #3, ¶ 10) Smith's Estate alleges that the Army employed certain mental health personnel and physicians at William Beaumont Army Medical Center ("WBAMC") who failed to provide care to Polanco. (Page ID #2, ¶ 3) Smith's Estate further alleges that the Army employed certain military personnel and individuals in Polanco's chain of

command who failed in their duties owed to Polanco and to the Army families and civilians. They allege that these failures led to the death of Smith. (Page ID #2, ¶ 4)

According to the Smith Estate, Polanco previously served in combat and was suffering from numerous psychiatric disorders that were either undiagnosed, improperly diagnosed or untreated or improperly treated by the medical providers at WBAMC. (Page ID #3, ¶ 11) The mental health care providers knew or should have known of Polanco's severe and debilitating Post Traumatic Stress Disorder ("PTSD") and that it was reasonably foreseeable that untreated or improperly treated PTSD would lead to violence or psychotic outbursts by Polanco. (Page ID #3, ¶ 12) Polanco's condition was brought to the attention of numerous individuals, including the mental health care providers at WBAMC. (Page ID #4, ¶ 13) In the weeks prior to the shooting incident, Polanco's family had requested assistance from the Army, through both the health care professionals and the chain of command. (Page ID #4, ¶ 14) Polanco's unit members had taken Polanco for medical care and psychiatric evaluation in the days preceding the incident. (Page ID #4, ¶ 14) The Smith Estate asserts that the health care professionals failed to comply with the standard of care in identifying severe PTSD, allowing Polanco back into the population resulting in the killing of Smith. (Page ID #4, ¶ 14)

The Smith Estate asserts that those in Polanco's chain of command, specifically First Sergeant Beattie, Company Commander Captain Steward, Second Lieutenant Alexander Foster and Post Commander General Bromberg, were aware or should have been aware of Polanco's extreme and dangerous risk of harm to the community at large and yet failed to take action to prevent the

death of Smith.  (Page ID #6, ¶¶ 22, 23)  In the months prior to the shooting, Polanco went to the chaplain for help but the chaplain's office declined.  (Page ID #6, ¶ 25)  Polanco's wife complained to Polanco's commanding officer, Captain Stewart, that Polanco needed help.  (Page ID #6, ¶ 26)  The week prior to the shooting, Polanco was considered Absent Without Leave ("AWOL") and had not been showing up to work but no action was taken on this charge.  (Page ID #6, ¶¶ 26–27)  On the morning of the shooting, several hours before his shooting spree, Polanco threatened his immediate supervisor with violence and death, but was permitted to leave the mandatory military training, causing Smith's death.  (Page ID #6, ¶ 28)

The Smith Estate alleges that despite warning by family and unit members, no efforts were made to remove weapons from Polanco's home, nor to remove Polanco from his position as an armed military police officer for the Army.  (Page ID #7, ¶ 29)  Polanco went home and, acting in the course and scope of his employment as a military police officer with the Army, opened fired on Smith, who was walking to school across the street from Polanco's base housing.  (Page ID #7, ¶ 30)  Smith was shot in the back of the head, in a sharp-shooter fashion as Polanco had been trained.  (Page ID #7, ¶ 30)  Polanco proceeded to open fire on other members of the base community, even asking others for assistance to move Smith's body.  (Page ID #7, ¶ 30)

### III.

#### A.  Motion to Dismiss Standard of Review

The court reviews *de novo* the district court's dismissal of an action for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim upon which relief may be granted

under Rule 12(b)(6) of the Rules of Civil Procedure. *Lovely v. United States,* 570 F.3d 778, 781 (6th Cir. 2009); *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003).

In a Rule 12(b)(1) motion attacking the claim of jurisdiction on its face, all allegations in the complaint must be considered as true. *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004). If the attack is the factual basis for jurisdiction, the evidence must be weighed and the plaintiff bears the burden of proving that jurisdiction exists. *Id.* We review the district court's application of law to the facts *de novo* and its factual determinations for clear error. *Golden v. Gorno Bros., Inc.,* 410 F.3d 879, 881 (6th Cir. 2005).

The Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), that to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain (1) "enough facts to state a claim to relief that is plausible; (2) more than "a formulaic recitation of a cause of actions' elements;" and (3) allegations that suggest a "right to relief above a speculative level." *Twombly,* 550 U.S. at 555–56. Although not directly overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. Although Rule 8 does not constitute a "hyper-technical, code-pleading regime," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009). For a complaint to survive a motion to dismiss, the non-conclusory "factual content" and

the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a

plaintiff to relief. *Id.* at 681. Where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the

pleader is entitled to relief." *Id.* at 679; Fed. R. Civ. P. 8(a)(2). The court primarily considers the

allegations in the complaint, although matters of public record, orders, items appearing in the record

of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin*

*Coll.,* 259 F.3d 493, 502 (6th Cir. 2001).

**B.      Sovereign Immunity / Federal Tort Claims Act**

It is a well-settled principle that the United States is immune from suit unless it expressly

waives its sovereign immunity and consents to be sued. *United States v. Mitchell,* 445 U.S. 535, 538

(1980). Congress adopted the FTCA which waives the sovereign immunity of the federal

government on a limited basis and confers subject matter jurisdiction on the federal district courts

to hear tort actions against the government for the negligence of its employees. The FTCA in part

states,

> [T]he district courts, . . ., shall have exclusive jurisdiction of civil actions on claims
> against the United States, for money damages, . . ., for injury or loss of property, or
> personal injury or death caused by the negligent or wrongful act or omission of any
> employee of the Government while acting within the scope of his office or
> employment, under circumstances where the United States, if a private person, would
> be liable to the claimant in accordance with the law of the place where the act or
> omission occurred.

28 U.S.C. § 1346(b)(1). As to tort claims, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.

The FTCA should be interpreted broadly to effectuate the legislative aim of putting the United States on equal footing with citizens in tort cases. *Premo v. United States,* 599 F.3d 540, 547 (6th Cir. 2010). However, waivers must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires. *Library of Cong. v. Shaw,* 478 U.S. 310, 318 (1986); *Blakely v. United States,* 276 F.3d 853, 864 (6th Cir. 2002)("[T]he circumstances of [waiver of sovereign immunity] must be scrupulously observed and not expanded by the courts.") Because the incident at issue occurred in Texas, that state's substantive law controls. 28 U.S.C. § 1346(b)(1).

## C.     Count I, Medical Negligence (Mental Health Professionals)

In its first claim, the Smith Estate contends that WBAMC doctors and medical staff knew or should have known that there was a probability of imminent physical injury to others from Polanco's PTSD, and therefore, they were negligent in failing to disclose that information. In dismissing this count, the district court agreed with the United States that under Texas law, "no duty runs from a psychologist to a third party to not negligently misdiagnose a patient's condition," citing *Thapar v. Zezulka,* 994 S.W.2d 635, 637 (Tex. 1999). The district court rejected the Smith Estate's reliance on *Wilson v. Brister,* 982 S.W.2d 42 (Tex. App. 1998), which involved a wrongful death and survival action brought by a parent of the patient who committed suicide. *Id.* at 43. The action was based on a failure by the doctor to adequately treat the doctor's *own* patient who later committed

suicide. *Id.* In the instant case, the action was brought by a *third party non-patient* asserting a

failure to adequately treat the patient and prevent that patient's criminal conduct directed at the third

party. (Opin., Page ID #138)

Relying on *Wilson*, the Smith Estate argues that a cause of action exists against a treating

mental health professional where the patient's criminal conduct is foreseeable prior to the patient's

actions. The Smith Estate argues that *Thapar* recognized that while mental health professionals are

prohibited from disclosing communication between the professional and the patient to third parties,

this prohibition is subject to certain exceptions. *See Thapar,* 994 S.W.2d at 638 & n.17.[1] The Smith

---

[1] Such exceptions in TEX. HEALTH & SAFETY CODE § 611.004 include:
(a) A professional may disclose confidential information only:

> (1) to a governmental agency if the disclosure is required or authorized by law;
> (2) to medical or law enforcement personnel if the professional determines that there is a probability of imminent physical injury by the patient to the patient or others or there is a probability of immediate mental or emotional injury to the patient;
> (3) to qualified personnel for management audits, financial audits, program evaluations, or research, in accordance with Subsection (b);
> (4) to a person who has the written consent of the patient, or a parent if the patient is a minor, or a guardian if the patient has been adjudicated as incompetent to manage the patient's personal affairs;
> (5) to the patient's personal representative if the patient is deceased;
> (6) to individuals, corporations, or governmental agencies involved in paying or collecting fees for mental or emotional health services provided by a professional;
> (7) to other professionals and personnel under the professionals' direction who participate in the diagnosis, evaluation, or treatment of the patient;
> (8) in an official legislative inquiry relating to a state hospital or state school as provided by Subsection (c);
> (9) to designated persons or personnel of a correctional facility in

Case No. 11-6079
*Estate of Smith v. United States*

Estate asserts that the exception to the non-disclosure laws codified in TEX. HEALTH & SAFETY

CODE § 611.004(a)(2) applies here. That provision, effective as of September 1, 2005, states,

> (a)    A professional may disclose confidential information only:
>
> *   *   *
>
> (2)    to medical or law enforcement personnel if the professional
> determines that there is a probability of imminent physical injury by
> the patient to the patient or others or there is a probability of
> immediate mental or emotional injury to the patient . . . .

TEX. HEALTH & SAFETY CODE § 611.004. We disagree.

In *Thapar,* the Texas Supreme Court addressed the question of "the duties a mental-health

professional owes to a nonpatient third party." *Thapar,* 994 S.W.2d at 637. The Texas Supreme

Court noted that liability in a negligence claim is premised on duty, a breach of which proximately

causes injuries, and damages resulting from that breach. *Id.* The threshold question of law for the

court in a negligence claim is whether a legal duty exists based on the facts surrounding the

occurrence in question. *Id.* "If there is no duty, there cannot be negligence liability." *Id.* The Texas

Supreme Court answered "definitively" the question of whether a mental health professional owes

a duty to a third party non-patient for negligent misdiagnosis or negligent treatment of the patient.

*Id.* at 638. Because the Texas Supreme Court has "definitively" ruled that a mental health

which a person is detained if the disclosure is for the sole purpose of
providing treatment and health care to the person in custody;
(10) to an employee or agent of the professional who requires mental
health care information to provide mental health care services or in
complying with statutory, licensing, or accreditation requirements .
. . .

professional owes no duty to a third party non-patient for negligent misdiagnosis or lack of treatment of a patient, the district court did not err in finding that the Smith Estate failed to state a claim against the United States and that the United States did not waive its sovereign immunity.

As to the failure to warn by the mental health professionals to either third parties or to law enforcement, the Texas Supreme Court also addressed the issue of whether a mental health professional owes a duty to directly warn third parties of a patient's threats. *Id.* at 638. The Texas Supreme Court notes that the Texas legislature chose to closely guard a patient's communications with mental health professionals by prohibiting disclosure to third parties unless an exception recited in the act applies. *Id.* (citing § 2(a), 1979 TEX. GEN. LAWS at 513). Based on this confidentiality statute, the Texas Supreme Court held that a disclosure by a mental health professional to third parties threatened by the patient would violate the confidentiality statute since there is no such exception in the statute for disclosure of threats made by the patient to third parties. *Id.* at 639. The Texas Supreme Court concluded that since the confidentiality statute prohibited the mental health professional from warning a potential third party victim, there is no duty to warn third parties of the patient's threats. *Id.*

Regarding warnings to other medical or law enforcement professionals, the Texas Supreme Court cited the same statute noted by the Smith Estate in its brief—TEX. HEALTH & SAFETY CODE § 611.004. While the Texas Supreme Court agreed that this statute was an exception to the confidentiality statute, it noted that the statute "*permits* these disclosures but does not *require* them." *Thapar,* 994 S.W.2d at 639. The term "allowing" in section 4(b) makes clear that disclosure of

confidential information under any of the statute's exceptions is permissive but not mandatory. *Id.* "Imposing a legal duty to warn third parties of patient's threats would conflict with the scheme adopted by the Legislature by making disclosure of such treats mandatory." *Id.* The Texas Supreme Court found that the confidentiality statute does not make disclosure of threats mandatory nor does it penalize mental health professionals for not disclosing threats and does not shield the professionals from civil liability for disclosing threats in good faith. *Id.* at 640. The Texas Supreme Court declined to impose a common-law duty on mental health professionals to warn third parties of threats made by their patients, including law enforcement, based on the Legislature's stated non-disclosure of confidential information policy and the non-mandatory disclosure exception in the statute.

Accordingly, the Smith Estate's negligence claim against the United States as to the medical professionals employed at WBAMC fails because no duty exists under Texas law that mental health care professionals must disclose any threats by their patients to third parties.

**D.      Count II, Gross Negligence by the Army and Chain of Command**

The district court dismissed Count II, the gross negligence claim against the Army and those in Polanco's chain of command, holding that the intentional tort exception in 28 U.S.C. § 2680(h) applied in this case. The intentional tort exception under the FTCA provides that the Act will not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . ." 28 U.S.C. § 2680(h). The district court concluded that the negligence claim, which stemmed from the assault and battery committed by Polanco, is barred by this exception to the

FTCA, as noted by the Supreme Court in *United States v. Shearer,* 473 U.S. 52, 55 (1985). (Opin., Page ID # 141)

On appeal, the Smith Estate argues that the intentional tort exception has no application to military policemen, such as Polanco, citing 28 U.S.C. § 1346. The Smith Estate further argues that Polanco's assault and battery arises not out of his own actions but out of the negligence of everyone within his chain of command. The Smith Estate urges this court not to consider the *Shearer* plurality decision but instead to adopt the reasoning in *Senger v. United States,* 103 F.3d 1437 (9th Cir. 1996). The *Senger* case supports the Smith Estate's position that the theory of *respondeat superior* created a separate duty on the United States apart from the actions of its employee, in this case, Polanco. The Smith Estate argues no discovery was taken in order to determine the extent of the Army's actions to support the *respondeat superior* claim, therefore the dismissal was improper.

In response, the United States argues that in *Satterfield v. United States,* 788 F.2d 395 (6th Cir. 1986), this court held the intentional tort exception applied to the claim that the negligent supervision of three Army privates caused the beating death of a fourth serviceman. The United States asserts this court adopted the plurality opinion of the Supreme Court in *Shearer* that section 2680(h) does not merely bar claims for assault or battery, but it also excludes any claim *arising out of* assault and battery. *Satterfield,* 788 F.2d at 399. The United States claims that the Smith Estate's argument that the Ninth Circuit case, *Senger,* should be applied is without merit because this court adopted the *Shearer* plurality decision.

In *Satterfield,* this court was faced with the question of "whether plaintiff's claim, that the Army's negligent supervision of these servicemen was the proximate cause of [plaintiff's] death, falls within the ambit of § 2680(h)." *Satterfield,* 788 F.2d at 399. Noting that the *Shearer* opinion had "equivocal precedential value," this court found the Supreme Court's reasoning compelling that section 2680(h) bars claims for assault or battery, but also bars claims *arising out of* assault and battery. *Id.* This court adopted the Supreme Court's plurality decision in *Shearer* that a claimant cannot avoid the reach of § 2680(h) by framing the complaint in terms of a negligent failure to prevent the assault and battery. *Id.* (quoting *Shearer,* 473 U.S. at 55). The panel read section 2680(h) to bar claims, "like respondent's that sound in negligence but stem from a battery committed by a Government employee." *Satterfield,* 788 F.2d at 399.

This panel is bound by precedent in this circuit. *Salmi v. Sec'y of Health & Human Servs.,* 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel."). This circuit has held that the intentional tort exception in section 2680(h) applies to negligent supervision claims like those alleged by the Smith Estate. The district court did not err in dismissing the Smith Estate's negligence claims against the Army and those in Polanco's chain of command in Count II.[2] Discovery would not change the outcome of this ruling.

**IV.**

---

[2] Because we conclude that the FTCA's intentional tort exception bars the Smith Estate's Count II, we need not reach the district court's alternative basis for dismissal—the FTCA's discretionary function exception, 28 U.S.C. § 2680(a). *See Milligan v. United States*, 6710 F.3d 686, 695–96 & n.2 (6th Cir. 2012). We only note that in the Complaint, the Smith Estate failed to cite any specific policies or procedures that it claims the United States violated.

For the reasons set forth above, the district court's findings are **AFFIRMED**.