**Eugene B. SHELKETT, III, a minor child By and Through his father and next friend, Eugene B. SHELKETT, II, Appellant,**

v.

**HARDEE'S FOOD SYSTEMS, INC., Appellee,**

and

**John D. Lynch and Todd Knight, Defendants.**

**Nos. 78505, 78937.**

Court of Appeals of Oklahoma, Division No. 1.

Feb. 2, 1993.

Ronald A. Schaulat and Michael H. Brady, Brady, Schaulat & Falsetti, Oklahoma City, for appellant.

Anton J. Rupert and LeAnne Burnett, Crowe & Dunlevy, Oklahoma City, for appellee.

## MEMORANDUM OPINION

ADAMS, Presiding Judge:

This action arises from an incident in which Eugene B. Shelkett, III (Shelkett), a minor, was injured as the result of an unprovoked assault by two other minors while Shelkett was attempting to place an order at a Hardee's Food Systems, Inc. (Hardee's) restaurant. Shelkett appeals a trial court order granting summary adjudication in favor of Hardee's, arguing the evidence, viewed in a light most favorable to him, raises a jury question concerning whether Hardee's owed him a duty as a business invitee to use ordinary care to protect him against intentional harmful acts by third persons. He also contends there is a substantial controversy as to material facts which warrants a trial on the issue of whether Hardee's breached that duty.

In reviewing orders of summary adjudication, we examine the pleadings and evidentiary materials to determine what facts are material and whether the evidentiary materials introduced indicate a substantial controversy as to any material fact. *Ross v. City of Shawnee*, 683 P.2d 535 (Okla.1984). All inferences and conclusions drawn from the underlying facts contained in affidavits, admissions, depositions, pleadings and other evidentiary materials must be viewed in a light most favorable to the party opposing the motion. *Weaver v. Pryor Jeffersonian*, 569 P.2d 967 (Okla.1977). Summary adjudication is only appropriate when there is no substantial controversy as to any material fact and one of the parties is entitled to judgment as a matter of law. *Flanders v. Crane Co.*, 693 P.2d 602 (Okla.1984). Our recitation of the facts and the analysis is guided by these principles.

## FACTS

On Friday, October 22, 1988, Shelkett and two of his friends entered Hardee's fast-food restaurant in Oklahoma City and immediately approached the front counter to place their orders. About three minutes later, John D. Lynch (Lynch), Todd Knight (Knight) and two other persons entered the restaurant acting "frisky" and "rambunctious." They entered the line behind Shelkett and his friends.

Knight then made a racially-motivated derogatory remark about one of Shelkett's friends, loud enough for the others to hear. Shelkett and the friend to whom the remark was directed turned around and responded. One of Hardee's employees then told them to "take it outside." Knight ordered Shelkett to turn around, and he did so. Less than a minute later and without warning, Knight struck Shelkett in the

back, and when Shelkett instinctively turned around, Lynch struck him in the face. Shelkett immediately went to the restaurant restroom to attend to his injuries. The police were summoned, but by the time they arrived, Knight and Lynch had left the premises.

Although there was some evidence that individuals who had consumed alcoholic beverages were allowed in the restaurant, there was no evidence that alcohol played a part in this incident. Nor does the record indicate Hardee's should have been aware of the potential for this kind of assault because of previous occurrences.

Nevertheless, Shelkett sued Hardee's, Lynch and Knight, claiming Hardee's should have provided proper security and implemented policies to protect its customers. Hardee's summary adjudication motion argued it had no duty to provide security or other protective measures because it had no notice or prior knowledge of prior criminal acts against its patrons.[1] The trial court sustained Hardee's motion, and Shelkett appealed.[2]

## ANALYSIS

Shelkett contends the evidence presented in the trial court was sufficient to show Hardee's owed a duty to protect him against unprovoked assaults by other patrons. He argues Hardee's was negligent in not employing security or additional personnel at its place of business, although it knew the premises were often frequented by teenagers on Friday nights after football games and movies. Shelkett further argues an employee's admonishment to "take it outside" was insufficient to deter Lynch and Knight, and the incident would not have occurred had Hardee's taken reasonable precautions to protect its patrons.

Citing *Shircliff v. Kroger Company*, 593 P.2d 1101 (Okla.App.1979), and this Court's reliance upon Restatement (Second) of Torts § 344,[3] Shelkett argues Hardee's could not stand idly by while he was being assaulted, but had an affirmative duty to take reasonable steps to prevent and stop the attack, which included an obligation to hire security personnel and implement company policies concerning the appropriate employee response to unlawful acts committed on its premises.

More particularly, Shelkett relies on Comment f of § 344, which states:

Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably

---

1. Hardee's also argued none of its acts were the proximate cause of Shelkett's injuries. We need not address this issue because the appeal is resolved on the duty issue.

2. Shelkett's initial appeal, No. 78,505, was challenged as premature because issues remained pending concerning his claim against Lynch and Knight. *See* 12 O.S.1991 § 1006. Subsequently, Shelkett dismissed his claims against Lynch and Knight and filed a new appeal, No. 78,937. This later development eliminated any jurisdictional defects in the first appeal, and the Oklahoma Supreme Court ordered the appeals consolidated under surviving No. 78,505.

3. Restatement (Second) of Torts § 344 (1965) reads:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
(a) discover that such acts are being done or are likely to be done, or
(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

sufficient number of servants to afford a reasonable protection.

In *Shircliff,* this Court stated that a "possessor's liability arises out of its knowledge and right to control [the premises]." 593 P.2d at 1106. In affirming the trial court's order sustaining the possessor's demurrer to plaintiff's evidence, the Court noted that the only employee who allegedly saw plaintiff being assaulted, after she began arguing with another woman who sought to advance her place in line, was a construction worker standing on stilts who had insufficient time to intercede on plaintiff's behalf.

Generally, courts in other jurisdictions which have adopted the Restatement's "no-duty" rule, in the absence of actual or constructive notice, hold that a business premises possessor is not liable for the resulting harm occasioned by assaults on its patrons by third parties where there is no evidence to show that any of defendant's employees either took any prior notice of the assailant or had any reason to do so before his harmful act against plaintiff. *See, e.g., Uihlein v. Albertson's, Inc.,* 282 Or. 631, 580 P.2d 1014 (1978); *Cornpropst v. Sloan,* 528 S.W.2d 188 (Tenn. 1975); *Castillo v. Sears, Roebuck & Co.,* 663 S.W.2d 60 (Tex.App.1983). The duty to protect one's patrons from the criminal acts of unknown third persons arises only when such acts are generally foreseeable. *See e.g., Stevens v. Jefferson,* 436 So.2d 33 (Fla.1983); *Pennington v. Church's Fried Chicken, Inc.,* 393 So.2d 360 (La.App.1980); *Shipes v. Piggly Wiggly St. Andrews, Inc.,* 269 S.C. 479, 238 S.E.2d 167 (1977).

Even in cases where business invitors have been held liable for the intentional harmful acts of third persons, some evidence of prior knowledge of the dangerous situation with sufficient time to act was present to create a duty to use ordinary care. In *Eastep v. Jack-in-the-Box, Inc.,* 546 S.W.2d 116 (Tex.Civ.App.1977), as in *Shircliff,* the Texas Court of Appeals found the time sequence of the particular events crucial in determining whether a fast-food restaurant owed an injured pa-tron a duty under § 344 of the Restatement.

In *Eastep,* assailants began cursing loudly and directing obscenities towards plaintiff's table, insults which plaintiff's party returned in kind. Witnesses estimated that assailants were in the restaurant six or seven minutes before they left their table and brandished weapons, taunting plaintiff's party for several additional minutes before injuring plaintiff in a fight which lasted between two and fifteen minutes. During this time, restaurant employees never demanded that assailants leave the premises. In reversing a judgment notwithstanding the verdict, the appellate court concluded the evidence supported an inference that had the employees acted as soon as they saw weapons displayed, the police, who arrived three minutes after they were called, would have arrived before plaintiff was injured.

In *Mills v. White Castle System, Inc.,* 167 Mich.App. 202, 421 N.W.2d 631 (1988), leave to appeal denied, 431 Mich. 880 (1988), plaintiffs and their friends were attacked while leaving defendant's fast-food restaurant by seven or eight persons who had been loitering in the parking lot for more than forty-five minutes, drinking alcohol, using obscenities and noticeably acting in a disorderly manner. During the attack, one of plaintiffs' companions reentered the restaurant and asked the manager to call the police. The manager refused, and also refused to allow the friend to call, suggesting the friend use the public telephone across the street.

The *Mills* court reversed a summary judgment for the restaurant, concluding there was evidence that the restaurant employees were in a position to control the unruly patrons' actions or to eject them from the premises, and the evidence supported an inference that defendant knew or should have known of assailants' presence on its premises. The court also concluded the employee's refusal to call the police when requested could result in a breach of defendant's duty to exercise reasonable care for its invitees' protection.

In *Gould v. Taco Bell,* 239 Kan. 564, 722 P.2d 511 (1986), another case applying Restatement (Second) of Torts § 344, plaintiff and her friend were seated in defendant's restaurant when assailant and her companions began engaging in loud, crude and vulgar conversation designed to be overheard by plaintiff's party. Upon leaving the restaurant, assailant approached plaintiff's table and directed a racial expletive to her. When plaintiff responded, assailant suddenly dashed towards plaintiff striking her in the face, inflicting a beating which continued for thirty seconds. Assailant again attacked plaintiff as she made her way to the door. During the second exchange, defendant's assistant manager watched, but made no attempt to stop the fight or call the police, but said to assailant, "Why don't you just leave? You did this two weeks before in here."

As plaintiff and her friend made their way to the parking lot, assailant attacked the friend, but defendant's employees refused to respond to renewed pleas to call the police or to allow them to use the phone, because the manager concluded this was a "public use." The Kansas Supreme Court affirmed a jury verdict for plaintiff, concluding restaurant had an obligation to warn plaintiff of any danger which might reasonably have been anticipated. Based on evidence that assailant had been involved in a similar altercation at this restaurant two weeks earlier, and management had considered hiring security personnel because of a history of rowdyism on the premises, the court held there was a "sequence of conduct" sufficient to require the restaurant to act on behalf of the patron's safety.

Here, however, there is no evidence that the violence which befell Shelkett was reasonably foreseeable by Hardee's. There is nothing in the record which shows that based on "past experience" or because of the "character of [Hardee's] business," Hardee's knew or should have known of a likelihood of harmful conduct by third persons which could compromise the safety of its patrons.

Shelkett testified the remark directed to his friend, while clearly inflammatory, was the only thing said or done before Shelkett was suddenly struck in the back and face. After the initial insult was made, there is no evidence that the altercation perceptively intensified before Shelkett was injured. There was no evidence that Hardee's delayed in summoning the police or did anything to hinder an investigation. Hardee's is not an insurer of its patrons' safety, and may not be held liable for an independent violent act which was not reasonably foreseeable.

Finally, we find *Johnson v. Mid–South Sports, Inc.,* 806 P.2d 1107 (Okla.1991), also relied upon by Shelkett, distinguishable from this case. In *Johnson,* the usher on duty during the wrestling match recognized the possibility of an argument between fans and exercised ordinary care in calling an officer over to investigate the rowdy behavior of several beer-drinking spectators. The nature of Mid–South's business and the fact that alcoholic beverages were sold and consumed on the premises, made the possibility of negligent or intentional misconduct reasonably foreseeable. However, there was nothing in the nature of Hardee's business, *i.e.,* selling fast-food, or in its past experience which would place it under a duty to anticipate such misconduct and provide special security. Although the comments made to Shelkett and his friends might have indicated a likelihood of physical altercation, on this record it is uncontroverted that in the minimal time between the comments and the sudden attack, at the most two to three minutes, Hardee's personnel could do nothing to prevent it.

This record shows no substantial controversy as to any material fact, and Hardee's was under no duty to take precautions or afford Shelkett any protection against the unexpected intentional acts of Lynch and Knight. Summary adjudication was appropriate.

AFFIRMED.

GARRETT and JONES, JJ., concur.