# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DANIELLE AND VINCENT JUNE,    )
                                    )     C.A. No. K23C-05-005 RLG

       Plaintiffs,         )
                                      )

WAL-MART STORES EAST, L.P.,    )
                                      )

       Defendants.       )

**Submitted: January 8, 2025**
**Decided: March 27, 2025**

## MEMORANDUM OPINION AND ORDER

*Upon Defendant's Motion for Summary Judgment - GRANTED.*

Liam N. Gallagher, Esquire (argued) and Nicholas H. Rodriguez, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware. *Attorneys for Plaintiffs.*

David G. Culley, Esquire, Tybout, Redfearn & Pell, Wilmington, Delaware. *Attorney for Defendant.*

**GREEN-STREETT, J.**

1

## I.  Introduction

A woman attacked another woman inside of a Wal-Mart.  The victim and her husband filed suit against the store, alleging the store negligently permitted the attack to occur.  The store now moves for summary judgment, contending it did not breach its duty of care.  As plaintiffs failed to demonstrate defendant should have foreseen and prevented the attack, Defendant is entitled to judgment as a matter of law.  The Motion for Summary Judgment is **GRANTED**.

## II.  Factual and Procedural Background

Plaintiff Danielle June and her former neighbor, Samantha Wright, have a long, contentious history, spanning several years.  This history includes multiple court appearances, no-contact orders, and a shouting match in the parking lot outside of a Wal-Mart operated by Defendant located in Camden, Delaware.[1]  Their animosity toward each other culminated in Ms. Wright physically attacking Ms. June while the two were inside of that same Wal-Mart on July 4, 2021.[2]  On that occasion, Ms. June observed Ms. Wright waiting in line for the store's pharmacy.[3]  Ms. June attempted to avoid Ms. Wright, but Ms. Wright saw Ms. June and yelled at her before

---

[1] Def.'s Mot. for Summ. J. at 1-4, D.I. 36 (Nov. 7, 2024).

[2] Compl. at 1, D.I. 1 (May 4, 2023).

[3] Def.'s Mot. for Summ. J. at 2.

beginning to attack her.[4]  Ms. Wright struck Ms. June several times before another customer intervened and separated the two.[5]

Several Wal-Mart employees were present for the immediate aftermath of the attack.  Sandra Worden, a pharmacy technician, heard "an altercation," and observed Ms. June lying on the floor.[6]  Kameek Hawkins, a team lead, responded to the area after he received a call on his walkie-talkie alerting him of the altercation.[7]  A review of the security camera footage capturing the incident shows that, by the time Ms. Worden and Mr. Hawkins arrived, a customer stepped in and separated Ms. Wright from Ms. June.[8]  The security footage does not show any indication that Ms. Wright telegraphed her attack on Ms. June before she began hitting her.[9]

Plaintiffs filed their Complaint on May 4, 2023, asserting that Defendant Wal-Mart Stores East, L.P. – the operator of the Wal-Mart where Ms. Wright attacked Ms. June – failed "to exercise reasonable care to prevent harmful acts to the injured Plaintiff."[10]  Defendant filed the instant Motion for Summary Judgment on

---

[4] Pls.' Resp. at 2, D.I. 40 (Dec. 6, 2024).

[5] Def.'s Ex. E at 1:01:25, D.I. 36 (Nov. 7, 2024).

[6] Def.'s Mot. for Summ. J. at 5.

[7] Id.

[8] Def.'s Ex. E at 1:01:25.

[9] Id.

[10] Compl. at 2.

3

November 7, 2024. Plaintiffs filed their Response on December 6, 2024, and Defendant filed its Reply on December 11, 2024.[11] The Court held oral argument on December 27, 2024. As trial was rapidly approaching and the Court wished to provide a decision to the parties, the Court issued a minute order granting summary judgment on January 8, 2025. This opinion rounds out the Court's basis and rationale for granting summary judgment.

## III.   Standard of Review

Under Superior Court Civil Rule 56(c), this Court may grant a motion for summary judgment when "there is no genuine issue of material fact[,] and [ ] the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of showing no genuine issues of material fact remain in dispute.[12] If the moving party meets that burden, the non-moving party must demonstrate material issues of fact remain.[13] The Court evaluates the record in a light most favorable to

---

[11] D.I. 41 (Dec. 11, 2024).

[12] Moore v. Sizemore, 405 A.2d 679, 680 (Del. 1979) (citing Ebersole v. Lowengrub, 180 A.2d 467 (1962)).

[13] Id.

4

the non-moving party.[14] "When the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law."[15]

## IV. __Analysis__

A claim based on negligence requires the Plaintiffs show Defendant failed to meet the standard of care required by a legally-defined duty.[16] Plaintiffs must also demonstrate that Defendant's "breach of that duty proximately caused [P]laintiffs['] injury."[17] Generally, the possessor of a public place "is not an insurer of a patron against personal injuries inflicted by third persons on the premises, but is liable only when [it] is negligent."[18] A possessor of land must, however, "protect a business invitee from unreasonable risks which are known to the possessor or might be discovered by the exercise of reasonable care."[19]

---

[14] Id. at 679.

[15] Connolly v. Theta Chi Fraternity, Inc., 2018 WL 1137587, at *3 (Del. Super. Feb. 28, 2018), aff'd sub nom. Connolly v. Alpha Epsilon Phi Sorority, 198 A.3d 179 (Del. 2018).

[16] Furek v. Univ. of Delaware, 594 A.2d 506, 516 (Del. 1991).

[17] Sadler v. Johnson, 2018 WL 3471175, at *2 (Del. Super. July 17, 2018) (internal quotations omitted) (quoting Staedt v. Air Base Carpetmart, Inc., 2011 WL 6140883 (Del. Super. Dec. 6, 2011)).

[18] Eastridge v. Thomas, 1987 WL 9605, at *2 (Del. Super. Apr. 13, 1987).

[19] Id. (citing DiSabatino Brothers, Inc. v. Baio, 366 A.2d 508 (Del. 1976)).

Plaintiffs allege Defendant should have known of the security risks – posed by both Ms. Wright and its customer base more generally – and failed to protect Ms. June from the danger caused by those unreasonable security risks.[20] As the basis for Defendant's alleged breach of duty, Plaintiffs point to Defendant's failure "to employ adequate security and surveillance personnel;" its failure to ban Ms. Wright from its store; and the failure of Defendant's employees to take any action to protect Ms. June.[21] Thus, the Court must first examine the scope of the duty Defendant owed to Ms. June, before determining whether Defendant's alleged inaction constituted a breach of that duty.

### A. The Court's analysis of the duty owed by Defendant is guided by Jardel and Craig

In determining the scope of Defendant's duty, the Court primarily takes guidance from two cases – Jardel Co. v. Hughes[22] and Craig v. A.A.R. Realty Corp.[23] Both Jardel and Craig deal with similar fact patterns: (1) an employee of a store located within a mall complex suffered a brutal attack; (2) the operator of the mall provided some level of security; and (3) the operator of the mall knew, or should

---

[20] Compl. at 2.

[21] Id.

[22] 523 A.2d 518, 525 (Del. 1987).

[23] 576 A.2d 688, 692 (Del. Super. 1989), aff'd, 571 A.2d 786 (Del. 1989).

have known, of extensive criminal activity at or directly around the mall complex, including a series of violent crimes. Craig differs from Jardel, and from the instant case, in that the defendant in Craig did not maintain control over the property in question.[24] In both Craig and Jardel, the Supreme Court of Delaware recognized the duty of the operator of a mall to provide some level of security against crimes committed by third parties when those crimes were foreseeable.[25] Both cases affirm Delaware's adoption of the Restatement (Second) of Torts § 344 as the appropriate standard for determining the scope of the duty owed by an operator of a property to its business invitees.[26]

Restatement (Second) of Torts § 344(f) provides:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or

---

[24] Id.

[25] Id. (holding a property owner "owed an affirmative duty to protect a business invitee from reasonably foreseeable dangers on the premises," but declining to extend that duty to a non-possessory owner); Jardel, 523 A.2d at 518 (holding "there is a residual obligation of reasonable care to protect business invitees from the acts of third persons.").

[26] Craig, 576 A.2d at 688; Jardel, 523 A.2d at 518.

criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

The Jardel court expanded on the idea that a property operator need not possess any particular reason to foresee a specific crime, concluding, "the repetition of criminal activity, regardless of its mix, may be sufficient to place the property owners on notice of the likelihood that personal injury, not merely property loss, will result."[27] The mix of crimes assessed by the Jardel court included a mix of property crimes and several serious crimes of violence, including a kidnapping, an armed robbery, and multiple sexual assaults.[28] Similarly, in Craig, the mall in question experienced a robust mix of crime, including a homicide; several kidnappings; and numerous assaults.[29]

Although the Jardel court outlined that a criminal history consisting entirely of property crimes *may* be sufficient to show a property operator possessed a duty to protect its customers against future crimes,[30] none of its progeny have held that *only* shoplifting, or similar minor property crimes, places a property operator on notice

---

[27] Jardel, 523 A.2d at 518.

[28] Id.

[29] Craig, 576 A.2d at 690.

[30] Jardel, 523 A.2d at 518.

of the risk of future violent crimes. Further, neither <u>Jardel</u> nor <u>Craig</u> considered the type of attack present in the instant case – a targeted attack based on a contentious personal history – but rather dealt with seemingly random attacks committed as crimes of opportunity. Against that backdrop, the Court considers the two potential avenues of foreseeability propounded by Plaintiffs: (1) whether Ms. Wright's and Ms. June's contentious history made it foreseeable to Defendant that Ms. Wright would physically attack Ms. June; and (2) whether the history of shoplifting incidents at the Camden Wal-Mart made it foreseeable that customers were at an increased risk of being physically attacked inside the store.

I.    **Defendant could not have reasonably anticipated Ms. Wright's assault of Ms. June based solely on their contentious history**

Plaintiffs first posit that Defendant "had previous knowledge of the aggressive and dangerous capabilities of Samantha Wright from a previous encounter."[31] The referenced encounter occurred on December 22, 2017, in the parking lot of the subject Wal-Mart.[32] Ms. June stated that Ms. Wright verbally berated her, causing Ms. June to call the police to report the incident after she left the premises.[33] Ms. June recalls police were unable to locate any no-contact order between Ms. Wright

---

[31] <u>Id</u>.

[32] Def.'s Ex. B at 75-76, D.I. 36 (Nov. 7, 2024).

[33] <u>Id</u>.

and herself, but that police did respond to the Wal-Mart parking lot.[34]  Ms. June's testimony does not clearly establish whether police officers made contact with any employee of Wal-Mart.[35]  A search of the evidentiary record does not produce any support for that contact or notice either.

Ms. June identified a single witness to that verbal altercation – an unknown Wal-Mart employee gathering shopping carts in the parking lot.[36]  Plaintiffs argue this single incident should have put Defendant on notice of Ms. Wright's "aggressive and dangerous capabilities."[37]  Even examining these facts in a light most favorable to Plaintiffs, they have not provided a sufficient factual basis to conclude – reasonably conclude – Defendant should have been on notice based on this isolated incident.

The record lacks any indication that police informed Defendant – or any of its representatives – that Ms. Wright acted in violation of a no-contact order.  In fact, the record instead indicates that police themselves could not find the no-contact order after searching for it – making it impossible for those same officers to have advised Defendant regarding any potential violations of the no-contact order.

---

[34] Id. at 83.

[35] Id.

[36] Id. at 80-81.

[37] Compl. at 2.

Further, store owners cannot possibly be expected to maintain awareness of the many interpersonal conflicts their customers may carry with them. A shouting match that occurred over three years prior to the attack in question does not provide notice to a storeowner that an assault may be imminent. As any facts demonstrating Defendant's actual knowledge of Ms. Wright's intentions are absent from the record, the Court cannot find that Defendant knew or should have known of the danger Ms. Wright posed. Similarly, no evidentiary showing has been made to establish Defendant should have known of Ms. Wright's potential for violence.

II. **Whether the extent of the criminal activity inside Wal-Mart put the Defendant on notice of an increased risk of violent crime is ordinarily a question for the jury**

Alternatively, Plaintiffs contend "the store is plagued by shoplifting issues," necessitating frequent police contact.[38] Defendant counters that Plaintiffs provide no evidence of "prior altercations of this nature" at the Wal-Mart in question.[39]

---

[38] Pls.' Resp. at 6.

[39] Def.'s Mot. for Summ. J. at 9 (Plaintiffs point to the testimony of Jennylyn Tulish to show a history of physical altercations at Wal-Mart. See Pls.' Resp. at 6. Ms. Tulish, however, transferred from the Wal-Mart in question to one in Elkton, Maryland sometime after the assault. See Pls.' Ex. C at 7. Ms. Tulish's testimony does not establish whether any of the physical altercations she observed occurred at the Wal-Mart in Camden, Delaware. Further, both Ms. Worden and Mr. Hawkins testified they have never observed a physical altercation during their extensive employment with the Camden Wal-Mart. See Def.'s Reply at 3.).

Defendant further argues that an extensive record of shoplifting incidents, standing alone, cannot put it on notice that a physical ambush likely would occur.[40]

The parties do not dispute that shoplifting occurs frequently at the Camden Wal-Mart. Mr. Hawkins testified "it would not be uncommon" for police to respond every other day to reports of shoplifting.[41] Though some ambiguity exists as to whether Plaintiffs have provided evidence of any physical altercations at the Camden Wal-Mart,[42] the record before the Court contains no evidence – ambiguous or otherwise – of any other type of crime occurring before the attack in question. The question thus becomes whether reports of shoplifting, absent additional reports of any other crime, made it foreseeable that a violent crime would occur. Stated another way, the Court must decide whether incidents of shoplifting expose a store operator to limitless liability if a customer suffers an injury from the criminal or tortious act of another customer.

Jardel's warning that "'property crimes,' such as shoplifting, may turn violent if a chase ensues," foretells that incidents of shoplifting may make other types of crimes foreseeable.[43] That language does not, however, create a framework wherein

---

[40] Def.'s Reply at 2.

[41] Pls.' Ex. B. at 30-31.

[42] See n.39, supra.

[43] Jardel, 523 A.2d at 525.

shoplifting, or other minor property crimes, necessarily make all future violent crimes foreseeable. Other jurisdictions have similarly declined to find that minor property crimes put a store operator on notice of the risk of all future violent crimes.[44]

Frequent occurrences of shoplifting may create a foreseeable risk of more severe crimes that follow logically from shoplifting.[45] Plaintiffs do not suggest that

---

[44] See Ann M. v. Pacific Plaza Shopping Ctr., 863 P.2d 207, 215 (Cal. 1993) (finding a storeowner had no duty to provide security guards when its records contained no evidence of prior violent crimes); see also Taylor v. Hocker, 428 N.E.2d 662, 665 (Ill. App. Ct. 1981) (holding instances of theft, even combined with a prior isolated incident of targeted violence on the premises, did not put the storeowner on notice of future violent crimes); see also Boudreau v. Shaw's Supermarkets, Inc., 2019 WL 3242051, at *14 (D. Me. July 18, 2019), aff'd, 955 F.3d 225 (1st Cir. 2020) (granting a storeowner's motion for summary judgment based on lack of foreseeability despite the store's (1) previous banning of the assailant from the premises; (2) suspicion of the particular assailant for shoplifting; and (3) repeated reports of the assailant making other customers uncomfortable); see also White v. Getty Petroleum Mktg. Inc., 2015 WL 9902673, at *6 (N.J. Super. Ct. App. Div. Jan. 25, 2016) (finding a record devoid of any evidence of prior violent crimes on the premises, and the personal nature of a targeted attack, "does not come close to the sort of proof necessary to impose a duty upon defendant to prevent this specific attack."); see also Florman v. City of New York, 293 A.D.2d 120, 126 (N.Y. App. Div. 2002) (holding that although a property owner may be required to provide security, the property owner may not be on notice for all types of crime that occurred on its property); see also Shelkett v. Hardee's Food Sys., Inc., 848 P.2d 63, 67 (Okla. Civ. App. 1993) (affirming the granting of summary judgment based on lack of foreseeability, even though the assailant made threatening remarks to the plaintiff several minutes before the attack took place); see also Uihlein v. Albertson's, Inc., 580 P.2d 1014, 1018 (Or. 1978) (declining to find shoplifting alone created foreseeability of violent crime, despite the store's location in a "high crime" area and the decision of nearby stores to employ security guards); see also Dews v. So, 167 Wash. App. 1010 (2012) (finding a record of criminal activity consisting of shoplifting, loitering, and illegal sales of beer did not create a foreseeable risk of a stabbing, even when the stabbing occurred because the assailant was attempting to flee after stealing from the defendant's store).

[45] See MacQuarrie v. Howard Johnson Co., 877 F.2d 126, 130 (1st Cir. 1989) (finding that Delaware law post-Jardel required a jury to determine if a history of "larceny of goods from a car" in a parking lot created a foreseeable risk of a violent robbery in that same parking lot).

the crime which occurred here follows logically from incidents of shoplifting. Rather, Plaintiffs submit that, if Defendant took steps to prevent shoplifting incidents – or crimes reasonably foreseeable from those incidents, those preventative measures would have thwarted Ms. Wright. This contention bypasses foreseeability, and, instead, attempts to group all violent crimes with those violent crimes that a reasonable jury could determine were foreseeable based on a history of shoplifting. No reasonable jury could conclude that the targeted attack at issue in this case constituted a reasonable and foreseeable progression from shoplifting. Plaintiffs need not provide prior evidence of occurrences of the specific crime in question, but there must exist some semblance of a connection between the current altercation and past incidents for a jury to appreciate that the latter forewarned a storeowner of the former.

As noted above, the cases applying Jardel's rejection of a crime-specific foreseeability standard have dealt with a factual record containing evidence of more than just shoplifting.[46] This Court rejects the notion here, on these facts, that Defendant was somehow placed on notice of violent crime based on shoplifting –

---

[46] See Dick v. Koutoufaris, 1990 WL 106193, at *4 (Del. Super. July 11, 1990) (evaluating a mix of primarily crimes against property interposed with "purse-snatchings"); Moore v. SOM, Inc., 2005 WL 1654601, at *2 (Del. Super. Mar. 31, 2005) (finding the question of foreseeability was appropriate for the jury when defendant had knowledge of "drug dealing, public drunkenness, and loitering" on its premises).

even routine and frequent shoplifting. The geyser of animosity between Ms. June and Ms. Wright finally erupted on July 4, 2021. That Wal-Mart was supposed to surmise that it was sitting on that volcano – with no information or notice of any seismic activity – defies logic. While Delaware jurisprudence generally dictates that foreseeability remains a question for the jury, that guidance does not exist in a vacuum devoid of specific evaluation and examination of the facts of each case. This Court remains unconvinced that the factual record presented in this case constitutes the type of case the Delaware Supreme Court contemplated for jury consideration.[47]

## V. **Conclusion**

A history of shoplifting, absent any other indicia, does not inherently create a foreseeable risk of all types of future violent crime. Plaintiffs have failed to show the attack on Ms. June became foreseeable based on a history of shoplifting incidents at the same location. Accordingly, Defendant is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment is **GRANTED**.

---

[47] Even if this Court agreed that the question of foreseeability in this case should be decided by the jury, which it does not, Plaintiffs have offered no evidence of a connection between shoplifting incidents and the type of attack perpetrated by Ms. Wright. That shoplifting may lead to violence if a chase ensues may be common knowledge within reach of a jury. However, demonstration of the foreseeability of an attack – completely untethered from any shoplifting-related crime – requires more than just a conclusory statement that frequent shoplifting puts a store operator on notice of future crime. Absent any documentary or testimonial evidence that would permit a jury to conclude that this attack became foreseeable based on the frequency of shoplifting at Defendant's store, Plaintiffs' claims fail.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge